**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | |
|---|---|
| **RUSSELL GEISSLER**, *individually and on behalf of others similarly situated*, ) ) ) | Case No.: 4:17-cv-01746-MBS-TER |
| Plaintiff, ) ) | |
| vs. ) ) | **SECOND AMENDED CLASS ACTION COMPLAINT** |
| **BRYAN P. STIRLING**, Director of the South Carolina Department of Corrections (SCDC), *in his official capacity*; and **JOHN B. MCREE, M.D.**, Division Director of Health and Professional Services for SCDC; **DIVYA AHUJA, M.D.; JAMES GRUBBS, M.D.; AND ANSAL SHAH, M.D.**, *in their individual capacities*, ) ) ) ) ) ) ) ) ) ) | **(Jury Trial Demanded)** |
| Defendants. ) ) | |

Plaintiff Russell Geissler, individually and on behalf of others similarly situated, by and through his undersigned counsel, brings this action under the Eighth Amendment to the U.S. Constitution via 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act, and the Rehabilitation Act, and alleges as follows:

**INTRODUCTION**

1.  The South Carolina Department of Corrections (SCDC) is charged with the care of over 19,000 inmates. More than 600 of those inmates have chronic hepatitis C virus (HCV) infections. Because SCDC does not systematically test the inmates in its care, the number of inmates in its care with chronic HCV infections is probably much closer to 6,000 than 600, based on the Centers for Disease Control's estimates of HCV's prevalence in prisons.

2.      Chronic HCV causes liver inflammation and leads to fibrosis—or scarring—of the liver.  Advanced fibrosis will often become cirrhosis.  This inflammation and scarring necessarily leads to impaired liver function.

3.      If left untreated, chronic HCV can have numerous deleterious consequences including fatigue, weakness, liver cancer, chronic liver disease, internal bleeding, and even death.  Each day without treatment leads to decreased liver function.  Moreover, life expectancy decreases when treatment is delayed, even when treatment results in a cure.

4.      The medical standard of care calls for the testing of all inmates and requires that all HCV-positive patients be treated with direct-acting antiviral (DAA) drugs, provided the patients do not have a short life expectancy.   SCDC has publicly acknowledged that DAA drugs have a "cure rate" of over 95% for patients with chronic HCV.

5.      SCDC has (1) failed to systematically test the inmates in its care for chronic HCV; (2) exposed HCV-negative inmates to potential infection by HCV-positive inmates; and (3) deliberately instituted and implemented a policy that effectively denies or delays treatment for nearly 99% of the more than 600 SCDC inmates currently diagnosed with chronic HCV.

6.      Plaintiff Robert Geissler is an SCDC inmate who was diagnosed with chronic HCV in January 2014 after an SCDC medical professional noticed unusual lab readings in blood drawn for unrelated purposes.  But for these fortuitous blood tests, Plaintiff would not know his HCV-positive status.  And although the medical standard of care requires treatment, SCDC has repeatedly denied Plaintiff's requests for treatment.

7.      SCDC's acts and omissions, along with those of its employees, violate the Eighth Amendment of the United States Constitution, the Americans with Disabilities Act (ADA), and the Rehabilitation Act.

8.      Plaintiff seeks declaratory and injunctive relief on behalf of himself and all similarly situated SCDC inmates.  Plaintiff also seeks compensatory and punitive damages.

## JURISDICTION AND VENUE

9.      Plaintiff brings this action under the Eighth Amendment of the United States Constitution, as made applicable to the states pursuant to the Fourteenth Amendment, actionable under 42 U.S.C. § 1983.  Plaintiff also brings this action under Title II of the Americans with Disabilities Act (ADA), as amended, 42 U.S.C. §§ 12131 *et seq.*; and the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791 *et seq*.

10.      This Court has original subject matter jurisdiction of the federal questions presented in this case pursuant to 28 U.S.C. §§ 1331 and 1343.

11.      This Court has supplemental jurisdiction of the questions of South Carolina law under 29 U.S.C. § 1367(a).

12.      Venue is proper pursuant to 28 U.S.C. §§ 1391(b) and 1391(c) because Defendants reside and/or conduct business in the District of South Carolina.  To the extent any defendant resides outside of South Carolina, venue is still proper pursuant to 28 U.S.C. § 1391(g) because substantial events at issue in this litigation occurred in the District of South Carolina.

13.      Declaratory and injunctive relief is authorized by Rules 57 & 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

## PARTIES

14.      Plaintiff Robert Geissler is currently incarcerated in the SCDC system and has been at all relevant times.  Plaintiff suffers from chronic HCV but has not been treated for it.

15.      Plaintiff has exhausted all available administrative remedies.

16.     Defendant Bryan P. Stirling is the Director of the South Carolina Department of Corrections (SCDC).  As such, he is responsible for the overall operation of SCDC, including the operation of South Carolina's prison system and compliance with the United States Constitution and federal laws.  Defendant Stirling has overall responsibility for the SCDC budget and a nondelegable duty to provide constitutionally adequate medical care to all persons in his custody.  Defendant Stirling specifically approved and signed SCDC's HCV Policy, HS-19.09.  He is sued in his official capacity for injunctive and declaratory relief.  Defendant Stirling may be referred to in this complaint as the South Carolina Department of Corrections or SCDC.

17.     SCDC is a public entity under Title II of the Americans with Disabilities Act and receives federal financial assistance within the meaning of the Rehabilitation Act.

18.     Defendant Stirling has statutory authority to implement the relief sought in the Complaint.  *See* S.C. Code Ann. § 24-1-90.

19.     The actions of Defendant Stirling and his agents were performed under color of state law and constitute state action.

20.     Defendant John B. McRee, M.D., is the Division Director of Health and Professional Services for SCDC.  Defendant McRee was involved in drafting SCDC's HCV Policy, HS-19.09.  Defendant McRee has personally overseen and signed off on Plaintiff's medical treatment.  Defendant McRee is sued in his individual capacity.

21.     Defendants Divya Ahuja, M.D.; James Grubbs, M.D.; and Ansal Shah, M.D., are Infectious Disease Physicians employed by SCDC.  Defendant Ahuja was involved with drafting SCDC's HCV Policy.  Under SCDC's current HCV Policy, Defendants Ahuja, Grubbs, and Shah exercise decision-making authority regarding the treatment of individuals with HCV.  They are each sued in their individual capacities.

4

22.     All staff members mentioned herein were employees or agents of SCDC and acted within the scope of their employment or agency at all relevant times.

## FACTS

### Chronic Hepatitis C (HCV)

23.     The hepatitis C virus (HCV) is a viral infection spread through contaminated blood.

24.     Chronic HCV is a serious disease.  According to the Centers for Disease Control and Prevention, about 80% of individuals infected with chronic HCV will go on to develop a chronic liver disease.  Individuals with chronic HCV are at risk for liver failure, liver cancer, or death.

25.     Symptoms of chronic HCV can include bleeding easily, bruising easily, fatigue, poor appetite, jaundice, dark urine, itchy skin, ascites, swelling in the legs, weight loss, hepatic encephalopathy, and spider angiomas.  Although individuals infected with HCV may initially appear asymptomatic, the virus destroys the function of the circulatory systems, kidneys, and livers each day.

26.     Chronic HCV causes liver inflammation, and if HCV is left untreated it causes liver scarring, which is known as fibrosis.  Severe liver scarring is known as cirrhosis.

27.     Liver inflammation and fibrosis is measured with the METAVIR scoring system, which ranges from F0 to F4.  A METAVIR score of F0 indicates no fibrosis; F4 indicates cirrhosis; and F1, F2, and F3 indicate increasing levels of fibrosis.

28.     A liver biopsy is the most accurate way to determine the extent and existence of fibrosis.

### Standard of Care for HCV Treatment

29.     Until 2013, treatment for chronic HCV was a lengthy process involving weekly injections of drugs tailored specifically to each patient.  The success rate hovered around 50%, and

side effects were often severe.  Accordingly, there was no single standard of care for the treatment of chronic HCV.

30.    In October 2013, the FDA approved direct-acting antiviral (DAA) drugs that are orally administered, have little to no side effects, and have a 95% cure rate for chronic HCV after a 12-week course of treatment.   For chronic HCV, a "cure" is defined as a sustained virologic response—that is, no detectable HCV in a patient's blood—for 12 weeks following a course of treatment.  These new DAA drugs completely changed the treatment of chronic HCV.

31.    That same month, the three relevant medical societies—the American Association for the Study of Liver Disease (AASLD), the Infectious Disease Society of America (IDSA), and the International Antiviral Society-USA (IAS-USA)—convened experts in gastroenterology, hepatology, and infectious diseases to form a guidance panel (HCV Guidance Panel) to advise all practitioners who treat HCV.   The HCV Guidance Panel's extensive, evidence-based review of the testing, management, and treatment of HCV resulted in recommendations.   Those recommendations are regularly updated and available at www.hcvguidelines.org.   The Centers for Disease Control and Prevention encourages practitioners to follow the evidence-based standards of care developed by the HCV Guidance Panel.

32.    The HCV Guidance Panel's guidelines set forth the medical standard of care for the treatment of HCV, which is now well-established in the medical community.

33.    The HCV Guidance Panel recommends the immediate treatment for all patients with chronic HCV, except those with a short life expectancy that cannot be remediated by HCV therapy,

liver transplantation, or another directed therapy.  This is the standard of care for the treatment of HCV.[1]

34.    HCV-positive patients who successfully complete a course of treatment with DAA drugs experience numerous health benefits, including a greater than 70% reduction in the risk of liver cancer and a 90% reduction in the risk of liver-related mortality and liver transplantation.  They also experience a reduction in symptoms like fatigue and itchy skin.

35.    HCV-positive patients who successfully complete a course of treatment with DAA drugs can no longer transmit HCV to others.

36.    Because of the many benefits associated with successful HCV treatment, the HCV Guidance Panel recommends that practitioners treat HCV-infected patients with DAA drugs early in the course of chronic HCV infection before the development of severe liver disease and other complications.  More specifically, patients treated before their METAVIR scores reach F2 are likely to enjoy an extended life expectancy.

### Standard of Care for HCV Testing

37.    The U.S. Preventative Services Task Force (USPSTF) is a panel of nationally recognized experts in prevention, evidence-based medicine, and primary care.

38.    Because there is a high certainty that the net benefit is moderate or there is moderate certainty that the net benefit is moderate to substantial, USPSTF recommends HCV testing for all asymptomatic adults without known liver disease or functional abnormalities who (1) were born between 1945 and 1965 or (2) are at high risk of infection.

39.    Incarceration is a risk factor for HCV infection.

---

[1] For a detailed, evidence-based explanation for the standard of care, see *When and in Whom to Initiate HCV Therapy*, available at https://www.hcvguidelines.org/evaluate/when-whom.

40.    The Centers for Disease Control and Prevention also recommends HCV testing for everyone born between 1945 and 1965.

41.    These recommendations are the medical standard of care for asymptomatic adults without known liver disease or functional abnormalities.

### The Prevalence of HCV in SCDC

42.    As of February 2, 2018, 624 SCDC inmates—3.25% of all inmates in SCDC's care—had been diagnosed with chronic HCV.

43.    For the state departments of corrections that conduct opt-out testing for HCV, the rates of prevalence range from 8% to 40%.

44.    SCDC does not conduct opt-out testing for its inmates.  Accordingly, the percentage of currently incarcerated SCDC inmates infected with HCV is undoubtedly higher 3.25%.

45.    The Centers for Disease Control estimates that one-third of the inmate population is infected with chronic HCV.  Using this estimate, it is likely that more than 6,000 SCDC inmates are infected with HCV.

### SCDC's Policy and Practice of Denying Treatment to HCV-Positive Inmates

#### *Background*

46.    Until mid-2016, SCDC did not have an HCV Policy.  Instead, it ostensibly operated under the following policy for providing inmates with medical care:

> Inmates will receive medically necessary care throughout their period of incarceration until they are released. Medically necessary care includes treatment needed to maintain and/or prevent deterioration of an inmate's health (other than that which would occur due to the uncontrollable progression of a disease or normal aging process).

> SCDC Policy HS-18.15, Levels of Care (Nov. 1, 2007).

47.     Treating HCV-positive inmates with DAA drugs qualifies as "medically necessary care" within the meaning of HS-18.15 because it prevents the deterioration of HCV-positive inmates' health.

48.     But instead of treating Plaintiff and others like him with DAA drugs, SCDC implemented a new policy specifically targeting HCV:  SCDC Policy HS-19.09, Hepatitis C (May 27, 2016).

### *SCDC's HCV Policy*

49.     SCDC's HCV Policy establishes who is eligible for HCV testing and treatment.

50.     SCDC's HCV Policy fails to recommend testing for individuals born between 1945 and 1965, in contravention of the standard of care.

51.     SCDC's HCV Policy also fails to recommend testing for all inmates, despite the fact that incarceration is a risk factor for HCV and testing inmates for HCV is the standard of care.

52.     SCDC's HCV Policy does not recommend treatment for all HCV inmates, in contravention of the standard of care.

53.     SCDC's HCV Policy uses an arbitrary method to determine whether an inmate qualifies for HCV treatment that is not tied to the standard of care.  Specifically, if an HCV-positive inmate's APRI score (AST to Platelet Ratio Index) is below 2.0, the evaluation is stopped and the inmate does not qualify for treatment.

54.     A 2009 study published in the Annals of Hepatology demonstrated that significant fibrosis or even cirrhosis (that is, scarring correlating to a METAVIR score of F2, F3, or F4) can be predicted with high accuracy when an APRI score is above 0.75.[2]

---

[2] Mônica Salum Valverde Borsoi Viana, Kioko Takei, Diva Carvalho Collarile Yamaguti, Betty Guz, & Edna Strauss, *Use of AST platelet ratio index (APRI Score) as an alternative to liver*

55.    Another study showed that an APRI above 0.7 was relatively accurate for confirming significant fibrosis (METAVIR F2, F3, or F4).[3]

56.    By requiring an APRI score of 2.0 or greater for treatment, SCDC effectively ensures that no inmate will receive treatment with DAA drugs unless he or she has cirrhosis.

57.    The 2.0 APRI cutoff in SCDC's HCV Policy is designed to ration care, not provide inmates with the standard of care.

58.    SCDC's HCV Policy also denies treatment to inmates who have less than one year left on their sentences.  This is also an arbitrary number used to ration care.  Because the course of treatment lasts 12 weeks and the cure is confirmed 12 weeks after that, all HCV-positive inmates with more than 24 weeks left on their sentences should be eligible for treatment.

59.    SCDC's HCV Policy denies treatment to inmates for various additional arbitrary and morally based reasons instead of making the decision to treat based on a medically appropriate individual assessment.

60.    SCDC's HCV Policy denies treatment to inmates for various past behaviors that, if repeated, could either jeopardize HCV treatment or run the risk of reinfection if repeated.  The policy contains no provision for patient education or rehabilitation with regard to these potentially problematic behaviors.

61.    SCDC's HCV Policy evinces deliberate indifference to HCV-positive inmates.  Moreover, by singling out HCV-positive inmates for treatment that departs from its longstanding

---

biopsy for treatment indication in chronic hepatitis C, Annals of Hepatology, Jan.–Mar. 2009, at 26, 26–31, available at http://www.medigraphic.com/pdfs/hepato/ah-2009/ah091g.pdf.
[3] Zhong-Hua Lin, Yong-Ning Xin, Quan-Jiang Dong, Qing Wang, Xiang-Jun Jiang, Shu-Hui Zhan, Ying Sun, & Shi-Ying Xuan, *Performance of the aspartate aminotransferase-to-platelet ratio index for the staging of hepatitis C-related fibrosis: An updated meta-analysis*. 53 Hepatology 726–736 (2011), available at http://onlinelibrary.wiley.com/doi/10.1002/hep.24105/full.

medical treatment policies, SCDC discriminates against HCV-positive inmates in violation of the Americans with Disabilities Act and the Rehabilitation Act.

### *SCDC Intends to Continue to Deny HCV-Positive Inmates the Standard of Care*

62.     Despite the fact that (1) DAA drugs have been FDA-approved since late 2013 and (2) the standard of care is that all HCV-positive patients be treated with DAA drugs, provided they do not have a short life expectancy, SCDC has a policy and practice of not providing DAA drugs to inmates with HCV.

63.     SCDC acknowledges that DAA drugs have a cure rate of over 95%.[4]

64.     From 2014–2016, SCDC did not provide any treatment—let alone, DAA drugs—to inmates with HCV.

65.     In 2017, SCDC treated 9 HCV-positive inmates with DAA drugs.

66.     SCDC has clearly signaled its intention to continue to act in contravention of the prevailing standard of care and with deliberate indifference to the serious medical needs of HCV-positive SCDC inmates.  The Fiscal Year 2018–2019 Agency Budget Plan that Defendant Stirling authorized and submitted to Governor Henry McMaster *after* Plaintiff initiated this action contains a line item to establish a "Hepatitis 'C' Treatment Program."  (Relevant pages attached as Exhibit 1). The justification for this program is that it will "provide critical medications that will serve the [HCV] inmate population for a cure . . . and reduce the spread within our institutions and outside population upon their release."  *Id.*  Although this initially appears to be an acknowledgement the need for such a program, its inadequacy highlights SCDC's plans to continue to deny the standard of care to the

---

[4] Bryan P. Stirling, SCDC Agency Accountability Report for Fiscal Year 2016–2017 at 6 (Sep. 15, 2017) (noting that the "new drug regimen [for HCV] has over a 95% cure rate").

overwhelming majority of the inmates in its care: The program will serve only 16 inmates, despite the fact that the number of infected inmates likely numbers in the thousands.

### Plaintiff Russell Geissler

67.    Because one of Plaintiff's prescribed medications has the potential side effect of liver damage, Dr. Thomas Byrne, an SCDC physician, ordered that Plaintiff have a liver function panel test every three months.

68.    The first liver function panel test, performed in January 2013, showed elevated transaminase levels, which is indicative of inflamed or injured liver cells. After the Plaintiff's third test with elevated transaminase levels, Dr. Byrne ordered a Hepatitis C test in December 2013.

69.    On January 8, 2014, Plaintiff's HCV-positive status was confirmed, and on January 16, 2014, Plaintiff was informed of his HCV-positive status.

70.    Plaintiff began requesting treatment for HCV on or before May 13, 2014. On this date he also expressed complaints consistent with chronic HCV symptoms.

71.    Plaintiff has requested a liver biopsy to determine the progression of his HCV and has also requested vitamins and protein powders to combat his fatigue. SCDC has denied these requests.

72.    From May 2014 through today, Plaintiff's medical records contain notations regarding Plaintiff's desire to receive treatment for his HCV. To date, SCDC medical professionals have not provided Plaintiff with any treatment. Instead, they consistently inform him that he is not eligible for treatment at this time because he is not sick enough.

73.    During his incarceration, Plaintiff has met multiple additional HCV-positive inmates who have been told the same thing regarding treatment—they are not sick enough to receive treatment.

74.    In May 2017, a nurse informed Plaintiff that his current blood work did not indicate an aggressive infection.

75.    Defendant Grubbs made the following notation in Plaintiff's file on August 24, 2017:

PATIENT'S HCV PROTOCOL FORM WAS REVIEWED. HIS APRI IS <2 AND
HE IS NOT CURRENTLY A CANDIDATE FOR HCV TREATMENT (HS 19.09).
HE WILL BE RE-EVALUATED FOR TREATMENT IN 1YR.

76.    Plaintiff's APRI increased from .285 in June 2016 to .531 in August 2017.  Upon information and belief, his APRI has continued to increase, but has not yet passed the 2.0 threshold found in HCV Policy passed more than two years after his initial diagnosis.

77.    Because Plaintiff has been informed that he must allow this serious disease to progress before he becomes eligible for treatment, he has suffered substantial loss of enjoyment of life and mental anguish.

## CLASS ALLEGATIONS

78.    Pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and:

All current and future inmates in SCDC custody who have been or will be diagnosed with chronic HCV, who have at least 24 weeks remaining on their sentences and a life expectancy of more than one year, with the exception of inmates who are already receiving or have already completed treatment with DAA medications (the HCV-Positive Class); and

All current and future inmates in SCDC custody who have been diagnosed with chronic HCV, who have at least 24 weeks remaining on their sentences and a life expectancy of more than one year, with the exception of inmates who are already receiving or have already completed treatment with DAA medications (the HCV-Diagnosed Class).

79.    The HCV-Positive Class and the HCV-Diagnosed Class are collectively known as the Classes.

80.    Plaintiff seeks to represent the Classes for declaratory and injunctive relief.

81.    This action meets all of Rule 23(a)'s requirements.

82.     The action meets Rule 23(a)(1)'s numerosity requirement: In addition to the 624 current inmates with chronic HCV diagnoses of whom SCDC is aware, there are most likely substantially more SCDC inmates with undiagnosed chronic HCV.  SCDC does not systematically test inmates for HCV, but corrections departments that use opt-out testing have found HCV in 8–40 percent of their inmate populations.  The CDC estimates that approximately one-third of all inmates have chronic HCV.  *See* U.S. Department of Health and Human Services, Center for Disease Control and Prevention, *Hepatitis C & Incarceration*, Pub. No. 21-1306 (Oct. 2013), *available at* https://www.cdc.gov/hepatitis/hcv/pdfs/hepcincarcerationfactsheet.pdf.  Accordingly, the number of HCV-Positive Class members is likely around 6,000.  The number of persons who are members of the HCV-Diagnosed and HCV-Positive Classes is so large that joinder of all members in one action is impracticable.

83.     The action meets Rule 23(a)(2)'s commonality requirement: Regardless of any factual nuances that exist between class members, the legal relief sought is the same:

a.   A declaratory judgment that Defendant Stirling/SCDC has exhibited deliberate indifference to the serious medical needs of the HCV-Positive Class and has violated the HCV-Positive Class's right to be free from Cruel and Unusual Punishment, as secured by the Eighth Amendment to the U.S. Constitution;

b.   A declaratory judgment that Defendant Stirling/SCDC has violated the rights of the HCV-Diagnosed Class under the Americans with Disabilities Act and the Rehabilitation Act;

c.   Injunctive relief ordering Defendant Stirling/SCDC to develop and adhere to a plan to test all SCDC inmates for HCV and provide DAA drugs to all SCDC inmates diagnosed with HCV, consistent with the standard of care;

d.   Injunctive relief requiring Defendant Stirling/SCDC to (1) properly screen, evaluate, monitor, and prioritize treatment for HCV-positive SCDC inmates; (2) provide routine opt-out testing for HCV to all SCDC prisoners; and (3) modify the exclusions from HCV treatment based on APRI, viral load, life expectancy, history of drug or alcohol use, evidence of a tattoo or piercing received during incarceration, and time remaining on sentence to reflect an appropriate individual assessment and allow for patient education/rehabilitation of problematic behaviors.

14

84. The action meets Rule 23(a)(3)'s typicality requirement: Plaintiff's claims are typical of the Class members because (1) Plaintiff and all class members were injured by the same wrongful SCDC policies and practices described in this complaint; and (2) the claims are based on the same legal theories and factual questions relating to the standard of care.

85. Plaintiff's claims are representative of the class, as required by Rule 23(a)(4): (1) Plaintiff will fairly and adequately protect the interest of the Classes; (2) Plaintiff has no interests contrary to the Classes he seeks to represent; (3) Plaintiff is represented by competent and skilled counsel whose interests are aligned with the interest of the Classes and have substantial class action experience; (4) relief concerning Plaintiff's rights under the laws herein alleged and with respect to the Classes would be proper; and (5) SCDC has acted or refused to act with respect to the Classes as a whole.

86. A class action satisfies Rule 23(b)(2) because SCDC has acted or refused to act on grounds that apply generally to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Classes as a whole. Injunctive relief will end the policy and practice for members of the Classes, allowing them to receive proper medical evaluation and treatment for HCV.

## COUNT I - DEFENDANT STIRLING/SCDC
### (Eighth Amendment to the U.S. Constitution via 42 U.S.C. § 1983)

87. Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein verbatim, to the extent the Court deems them relevant.

88. Chronic HCV is a serious medical need.

89. SCDC's failure to provide the standard of care for multiple years and Defendant Stirling's forecasted intention to continue this practice at least until mid-2019 demonstrates deliberate indifference to the serious medical needs of Plaintiff and the HCV-Positive Class.

90.    Because of SCDC's failure to provide the standard of care for multiple years, SCDC inmates have likely died in prison due to complications from untreated HCV.

91.    Defendant Stirling knows of and enforces the policies and practices described in this complaint.  SCDC and its policymakers know of Plaintiff's and the HCV-Positive Class's serious medical needs, yet SCDC has continually and intentionally failed and refused to provide treatment that will address those serious medical needs, knowing that those actions have resulted, and will continue to result, in Plaintiff and the HCV-Positive Class's continued suffering and exposure to (1) impaired liver function and its symptoms, (2) liver failure and its symptoms, (3) liver cancer, and (4) death.

92.    Defendant Stirling has caused wanton infliction of pain upon SCDC inmates with chronic HCV, and has exhibited deliberate indifference to the serious medical needs of Plaintiffs and the HCV-Positive Class, in violation of the Eighth Amendment.

93.    Defendant Stirling knows, and has known, of the substantial risk of serious harm, and actual harms, faced by SCDC inmates with chronic HCV.  But Defendant Stirling has disregarded, and continues to disregard, those risks and harms by failing to provide the medical evaluation and treatment that would alleviate and eliminate those risks and harms.  Defendant Stirling has been deliberately indifferent to the substantial risk of serious harm to SCDC inmates with chronic HCV.

94.    By denying Plaintiff and the HCV-Positive Class their medically needed HCV treatment, Defendant Stirling has imposed punishment far in excess of that authorized by law, in violation of the Eighth Amendment.

95.    Defendant's actions with respect to Plaintiff and the HCV-Positive Class amount to grossly inadequate care.

96.     Defendant's actions with respect to Plaintiff and the HCV-Positive Class is medical care so cursory as to amount to no medical care.

97.     As a direct and proximate cause of this patter, practice, policy, and deliberate indifference, Plaintiff and the HCV-Positive Class have suffered, and continue to suffer, from harm and violation of their Eighth Amendment rights.  These harms and violations will continue unless enjoined by this Court.

## COUNT II – DEFENDANT STIRLING/SCDC
### (Americans with Disabilities Act, 42 U.S.C. §§ 12131, *et seq.*)

98.     Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein verbatim, to the extent the Court deems them relevant.

99.     This count is brought under Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq*. and 42 U.S.C. §§ 12131–12134 and its implementing regulations.

100.    SCDC is a public entity within the meaning of 42 U.S.C. § 12131(1) and 28 C.F.R. § 35.103.

101.    Plaintiff and the HCV-Diagnosed Class have been diagnosed with chronic HCV, which is a physiological disorder or condition that affects one or more body systems, including but not limited to the digestive, gastrointestinal, immune, circulatory, cardiovascular, and hemic systems, and is therefore a physical impairment. 42 U.S.C. § 12102(1) & (2); 28 C.F.R. § 35.108(a) & (b). This physical impairment substantially limits one or more major life activity, including but not limited to eating, walking, bending, lifting, concentrating, thinking, and communicating; the operation of major bodily functions such as digestive, gastrointestinal, immune, circulatory, cardiovascular, and hemic systems; and the operation of the liver. 42 U.S.C. § 12102(2); 28 C.F.R. § 35.108(c).

102. Plaintiff and the HCV-Diagnosed Class have a record of having an impairment that substantially limits one or more major life activity, as they have a history of such an impairment. 42 U.S.C. § 12102(1)(B); 28 C.F.R. § 35.108(a)(1)(ii) & (e).

103. Plaintiff and HCV-Diagnosed Class are regarded by SCDC as has having an impairment that substantially limits one or more major life activity, as SCDC perceives them as having such an impairment. 42 U.S.C. § 12102(1)(C) & (3); 28 C.F.R. § 35.108(a)(1)(iii) & (f). SCDC has subjected them to a prohibited action because of an actual or perceived physical impairment.

104. Plaintiff and the HCV-Diagnosed Class are qualified individuals with a disability because they meet the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by SCDC, including but not limited to medical services. 42 U.S.C. § 12131(2); 28 C.F.R. § 35.104.

105. By withholding medical treatment from those with chronic HCV, but not withholding medical treatment from those with other disabilities or those who are not disabled, SCDC excludes Plaintiff and the HCV-Diagnosed Class from participation in, and denies them the benefits of SCDC services, programs, and activities (such as medical services), by reason of their disability. 42 U.S.C. § 12132; 28 C.F.R. § 35.130(a).

106. By withholding medical treatment from those with chronic HCV, but not withholding medical treatment from those with other disabilities or those who are not disabled, SCDC subjects Plaintiff and the HCV-Diagnosed Class to discrimination. 42 U.S.C. § 12132; 28 C.F.R. § 35.130(a).

107. SCDC fails to provide Plaintiffs and the HCV-Diagnosed Class with equal access and enjoyment of effective medical services. 28 C.F.R. § 35.130(b)(1).

108.    SCDC utilizes criteria or methods of administration that have the effect of subjecting Plaintiff and the HCV-Diagnosed Class to discrimination and that defeat or substantially impair accomplishment of the objectives of medical treatment for chronic HCV. 28 C.F.R. § 35.130(b)(3).

109.    Defendant Stirling has known about the violations noted herein but has failed to correct them, thereby exhibiting deliberate indifference to the rights of Plaintiff and the HCV-Diagnosed Class.

110.    As a direct and proximate cause of these actions and omissions, Plaintiff and the HCV-Diagnosed Class have suffered and continue to suffer from harm and violation of their Americans with Disabilities Act rights. These harms will continue unless enjoined by this Court.

## COUNT III – DEFENDANT STIRLING/SCDC
### (Rehabilitation Act, 29 U.S.C. §§ 791–794a)

111.    Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein verbatim, to the extent the Court deems them relevant.

112.    This count is brought under Section 504 of the Rehabilitation Act, 29 U.S.C. §§ 701, *et seq*. and 29 U.S.C. §§ 791–794, *et seq*., and its implementing regulations.

113.    SCDC is a program or activity receiving federal financial assistance. 29 U.S.C. § 794.

114.    SCDC excludes Plaintiff and the HCV-Diagnosed Class—all qualified individuals with disabilities—from participation in, and denies those individuals the benefits of programs or activities, solely by reason of the individuals' disabilities. 29 U.S.C. § 794(a); 28 C.F.R. § 42.503(a).

115.    SCDC subjects Plaintiff and the HCV-Diagnosed Class—all qualified individuals with disabilities—to discrimination. 29 U.S.C. § 794(a).

116.    SCDC denies Plaintiff and the HCV-Diagnosed Class—all qualified handicapped persons—the opportunity accorded others to participate in programs or activities. 28 C.F.R. § 42.503(b)(1).

117.    SCDC utilizes criteria or methods of administration that either purposely or in effect discriminate on the basis of handicap, and defeat or substantially impair accomplishment of the objectives of SCDC's programs or activities with respect to handicapped persons. 28 C.F.R. § 42.503(b)(3).

118.    Defendant has known about the violations noted herein but has failed to correct them, thereby exhibiting deliberate indifference to the rights of Plaintiffs and the HCV-Diagnosed Class.

119.    As a direct and proximate cause of this exclusion, Plaintiffs and the HCV-Diagnosed Class have suffered and continue to suffer from harm and violation of their Rehabilitation Act rights. These harms will continue unless enjoined by this Court.

## COUNT IV – DEFENDANTS MCREE, AHUJA, GRUBBS, AND SHAH
### (Eighth Amendment to the U.S. Constitution via 42 U.S.C. § 1983)

120.    Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein verbatim, to the extent the Court deems them relevant.

121.    Defendants McRee, Ahuja, Grubbs, and Shah are practicing medical doctors.

122.    Defendants Ahuja, Grubbs, and Shah are experts in the field of infectious diseases.

123.    Defendants McRee, Ahuja, Grubbs, and Shah are aware of Plaintiff's chronic HCV diagnosis.

124.    Defendants McRee, Ahuja, Grubbs, and Shah are aware that the standard of care for treating HCV calls for the prescription of direct-acting antiviral drugs for all individuals with HCV, not just those who are sick enough.

125.    At various points in time since Plaintiff's HCV diagnosis, Defendants McRee, Ahuja, Grubbs, and Shah have all exercised decision-making authority with regard to Plaintiff's course of treatment for HCV.

126.     In response to Plaintiff's May 2014 inquiry into whether he was going to receive treatment for his chronic HCV, Defendant McRee wrote "HAVE LONG LIST OF FOLKS WAITING ON TREATMENT.  NO HEP C CLINIC AT PRESENT[.] IN CONVERSATION[S] WITH INFECT[IOUS] DIS[EASE] AT USC MEDICAL SCHOOL."

127.     As the Infectious Disease Physicians identified in SCDC's HCV Policy, Defendants Ahuja, Grubbs, and Shah received Plaintiff's medical evaluation for possible treatment of his HCV. Defendants Ahuja, Grubbs, and Shah were tasked with choosing a "treatment regimen" based on various factors, including "[HCV] genotype, drug interactions, co-morbidities, previous treatment, [and] stage of liver."

128.     At no point in time since Plaintiff's HCV diagnosis have Defendants McRee, Ahuja, Grubbs, or Shah recommended that Plaintiff receive HCV treatment.

129.     At no point in time since Plaintiff's HCV diagnosis have Defendants McRee, Ahuja, Grubbs, or Shah provided Plaintiff with any HCV treatment.

130.     The failure of Defendants McRee, Ahuja, Grubbs, or Shah to recommend, prescribe, or provide the standard of care to Plaintiff for his HCV constitutes deliberate indifference.

131.     As a direct and proximate cause of this pattern, practice, policy, and deliberate indifference, Plaintiff has suffered, and continues to suffer, from harm and violation of his Eighth Amendment rights.  Specifically, Plaintiff has and will continue to suffer:

     a.   pain and suffering;

     b.   loss of enjoyment of life; and

     c.   mental and emotional anguish;

132.     As a direct and proximate result of the violation of Plaintiff's Eighth Amendment rights by Defendants McRee, Ahuja, Grubbs, and Shah as alleged above, Plaintiff is entitled to recover

21

actual, consequential, and punitive damages against Defendants in an amount to be determined by the

trier of fact.

## PRAYER FOR RELIEF

133.    WHEREFORE, Plaintiff demands the following relief:

a.    An order certifying this case as a class action, with the Classes defined under Rule

23(b)(2) as:

All current and future inmates in SCDC custody who have been or will be diagnosed with chronic HCV, who have at least 24 weeks remaining on their sentences and a life expectancy of more than one year, with the exception of inmates who are already receiving or have already completed treatment with DAA medications (**the HCV-Positive Class**); and

All current and future inmates in SCDC custody who have been diagnosed with chronic HCV, who have at least 24 weeks remaining on their sentences and a life expectancy of more than one year, with the exception of inmates who are already receiving or have already completed treatment with DAA medications (**the HCV-Diagnosed Class**).

b.    A declaratory judgment that Defendant Stirling/SCDC has exhibited deliberate

indifference to the serious medical needs of Plaintiff and the HCV-Positive Class and

has violated Plaintiff and the HCV-Positive Class's right to be free from Cruel and

Unusual Punishment, as secured by the Eighth Amendment to the U.S. Constitution;

c.    A declaratory judgment that Defendant Stirling/SCDC has violated the rights of

Plaintiff and the HCV-Diagnosed Class under the Americans with Disabilities Act

and the Rehabilitation Act;

d.    A preliminary and permanent injunction ordering Defendant Stirling/SCDC to (1)

immediately provide Plaintiff Russell Geissler with the standard of care (a course of

treatment with DAA drugs) and (2) develop and adhere to a plan to test all SCDC

inmates for HCV and provide DAA drugs to all SCDC inmates diagnosed with HCV,

consistent with the standard of care;

22

e.  A preliminary and permanent injunction requiring Defendant to (1) properly screen, evaluate, monitor, and prioritize treatment for HCV-positive SCDC inmates; (2) provide routine opt-out testing for HCV to all SCDC prisoners; and (3) modify the exclusions from HCV treatment based on APRI, viral load, life expectancy, history of drug or alcohol use, evidence of a tattoo or piercing received during incarceration, and time remaining on sentence to reflect an appropriate individual assessment and allow for patient education/rehabilitation of problematic behaviors;

f.  An order enjoining Defendant Stirling/SCDC from taking any action to interfere with Plaintiff's right to maintain this action, or from retaliating in any way against Plaintiff for bringing this action;

g.  An order retaining jurisdiction over this matter to ensure that the terms of any injunction are fully implemented;

h.  Compensatory damages for Plaintiff;

i.  Punitive damages for Plaintiff;

j.  An award of Plaintiff's attorneys' fees, costs, and litigation expenses under 42 U.S.C. § 12205, 29 U.S.C. § 794a, and 42 U.S.C. § 1988; and

k.  Such other relief as the Court may deem equitable and just under the circumstances.


**[SIGNATURE PAGE TO FOLLOW]**

**YARBOROUGH APPLEGATE LLC**

s/ Christopher J. Bryant
David B. Yarborough Jr., Federal ID 7336
david@yarboroughapplegate.com
Christopher J. Bryant, Federal ID 12538
chris@yarboroughapplegate.com
291 East Bay Street, Floor 2
Charleston, SC 29401
(843) 972-0150 office
(843) 277-6691 fax

**RICHARD A. HARPOOTLIAN, P.A.**

Richard A. Harpootlian, Federal ID 1730
rah@harpootlianlaw.com
Christopher P. Kenney, Federal ID 11314
cpk@harpootlianlaw.com
1410 Laurel Street
Post Office Box 1040
Columbia, South Carolina 29202
(803) 252-4848 office
(803) 252-4810 fax

**GUTTMAN, BUSCHNER & BROOKS PLLC**

Reuben A. Guttman*
rguttman@gbblegal.com
Justin S. Brooks*
jbrooks@gbblegal.com
Elizabeth H. Shofner*
lshofner@gbblegal.com
2000 P Street, NW
Suite 300
Washington, D.C. 20036
(202) 800-3001 office

*ATTORNEYS FOR PLAINTIFF*

March 13, 2018
Charleston, South Carolina

* unopposed motion for *pro hac* admission forthcoming