# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# FLORENCE DIVISION

| | |
|---|---|
| **RUSSELL GEISSLER**, **BERNARD BAGLEY, AND WILLIE JAMES JACKSON**, *individually and on behalf of others similarly situated*,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>**BRYAN P. STIRLING**, Director of the South Carolina Department of Corrections (SCDC), *in his official capacity*; and **JOHN B. MCREE**, **M.D.**, Division Director of Health and Professional Services for SCDC, *in his individual capacity*,<br><br>　　　　Defendants. | Case No.: 4:17-cv-01746-MBS<br><br>**JOINT MOTION FOR PRELIMINARY APPROVAL OF PARTIAL CONSENT DECREE**<br>**(Testing for Chronic Hepatitis C)** |

Plaintiffs Russell Geissler and Bernard Bagley (the "Testing Class Representatives"), and Defendant Bryan Stirling have entered into a Partial Consent Decree that resolves, subject to Court approval, all claims for injunctive and declaratory relief regarding South Carolina Department of Corrections ("SCDC") testing policies and practices related to chronic Hepatitis C ("HCV"). This partial consent decree would resolve all such claims for the class of all current and future inmates in SCDC custody, with the exception of inmates who have already been diagnosed with chronic HCV (the "Testing Class"). The parties have stipulated to the Testing Class (ECF No. 125), and the Court is scheduled to hold a hearing on the stipulation for class certification on December 6, 2018. (ECF No. 132).

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the parties jointly move the Court to enter an order:

(1) Granting preliminary approval of the proposed Partial Consent Decree;

(2) Approving the form of notice to be provided to the Testing Class; and

(3) Setting a date for a hearing on the fairness, reasonableness, and adequacy of the Partial Consent Decree pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

## BACKGROUND

On June 30, 2017, Plaintiff Russell Geissler filed a pro se complaint seeking, among other things, (1) treatment for his chronic HCV and (2) treatment for all SCDC inmates with chronic HCV. (ECF No. 1 at 6). The Court appointed counsel for Plaintiff Geissler on January 9, 2018, in light of "the state of the law regarding the issue." (ECF No. 72 at 2). The parties were unable to negotiate a settlement for Plaintiff Geissler's individual claims, and appointed counsel associated additional counsel and filed the Second Amended Class Complaint seeking, in part, comprehensive testing of all SCDC inmates for chronic HCV. (ECF No. 88).

Since May 2013, the Centers for Disease Control ("CDC") has recommended that testing for chronic HCV should be done in a two-step process to confirm chronic HCV. In the first step, it is determined whether the HCV antibody is present. If the HCV antibody is present, the second step is to determine whether the HCV infection is current by conducting nucleic acid testing. CDC, *Testing for HCV Infection: An Update of Guidance for Clinicians and Laboratorians*, Morbidity and Mortality Weekly Report (May 10, 2013), *available at* https://www.cdc.gov/mmwr/preview/mmwrhtml/mm6218a5.htm.

At the time the Second Amended Complaint was filed, all counsel were aware that SCDC did not have a comprehensive testing program that screened inmates for chronic HCV. The parties subsequently engaged in extensive written and some oral discovery. Through this process, SCDC has acknowledged that the 2-step process has not been completed in all cases where an inmate has been tested for HCV antibodies.

On August 21, 2018, Plaintiffs' counsel filed the Third Amended Complaint, in part to reflect this new information. (ECF No. 108 at ¶ 1). In addition, Plaintiffs added Bernard Bagley as a plaintiff to the action because SCDC had refused his requests to have testing for chronic HCV, despite the fact that he was (a) born between 1945 and 1965, and (b) received a blood transfusion before 1992. The CDC recommends testing for both groups of individuals. CDC, *Testing Recommendations for Hepatitis C Virus Infection*, https://www.cdc.gov/hepatitis/hcv/guidelinesc.htm (last visited Dec. 3, 2018). Plaintiffs Geissler and Bagley are the proposed representatives for the Testing Class. (ECF No. 125).

The Testing Class Representatives assert that Defendant has violated the Eighth Amendment rights of the Testing Class by failing to provide all inmates with an opportunity to be tested for chronic HCV pursuant to CDC guidelines. Defendants deny any constitutional violations with respect to the Testing Claims. Both parties recognize the inherent uncertainty and risks of litigation, and the time and costs involved for both parties in continuing to litigate the Testing Claims.

The parties have engaged in extensive settlement discussions since Plaintiff Geissler received appointed counsel. More recently, those discussions have focused on the Treatment Claims, which remain subject to litigation. On November 28, 2018, the Testing Class Representatives and Defendant Stirling agreed to the terms contained in the Partial Consent Decree, which is attached as Exhibit 1 to this joint motion and summarized below.

Under the proposed Partial Consent Decree, SCDC agrees to:

A. Implement the CDC's recommended two-step process for diagnosing chronic HCV;

B. Test Plaintiffs Geissler and Bagley for chronic HCV according to the CDC guidelines within 21 days of preliminary approval of this Partial Consent Decree;

C. Expeditiously test a sample size large enough to estimate the scope of chronic HCV within SCDC with confidence;

3

D.  Provide Governor McMaster and the legislature with accurate estimates regarding the scope of chronic HCV and costs associated with treating it;

E.  Complete two-step testing for all inmates who have tested positive for HCV antibodies;

F.  Provide all new SCDC inmates going through intake with an opportunity to receive chronic HCV testing;

G.  Provide all SCDC inmates with an opportunity to receive chronic HCV testing.

H.  Establish and maintain an accurate electronic database of inmates with chronic HCV;

I.  Report progress every four months until the program is fully implemented; and

J.  Provide notice of the terms of the Partial Consent Decree to current SCDC inmates by posting the proposed agreement in each prison.

## ARGUMENT

"[B]efore entering a consent decree," the Court must be satisfied that the agreement is "not illegal, a product of collusion, or against the public interest" and "is fair, adequate, and reasonable." *United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999) (quoting *United States v. Colorado*, 937 F.2d 505, 509 (10th Cir. 1991) (internal quotation marks omitted)). Although "this assessment does not require the court to conduct 'a trial or a rehearsal of the trial,' the court must take the necessary steps to ensure that it is able to reach 'an informed, just and reasoned decision.'" *Id.* (quoting *Flinn v. FMC Corp.*, 528 F.2d 1169, 1172–73 (4th Cir. 1975)).

To determine whether the agreement is fair, the Court must review the record and consider the strength of the Plaintiffs' case. *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975). "In reviewing the record and evaluating the strength of the case, the trial court should consider the extent of discovery that has taken place, the stage of the proceedings, the want of collusion in the settlement, and the experience of counsel who may have represented the plaintiffs in the negotiation." *Id.* (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by*

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)). "So long as the record before [the Court] is adequate to reach an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated and form an educated estimate of the complexity, expense and likely duration of such litigation, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise, it is sufficient." *Flinn.*, 528 F.2d at 1173.

As a threshold matter, this agreement to provide SCDC inmates with testing for chronic HCV that meets the medical standard of care[1] asserted by Plaintiffs is neither illegal nor the product of collusion. The agreement was reached through arms-length negotiations.

This agreement is also in the public interest. An estimated 1% of the non-inmate population has chronic HCV; that number rises to an estimated 17% for the inmate population. Teianhua He, M.D. et al., *Prevention of Hepatitis C by Screening and Treatment in U.S. Prisons*, Annals of Internal Medicine (Nov. 24, 2015) (Exhibit 2, SCDC Documents for Informal Discovery Response 000001). As individuals move in and out of the prison system and are unaware of their HCV status, they can transmit the disease to others. *Id.* at 3 (identifying a model for how the disease spreads vis-à-vis individuals moving in and out of the prison system). Studies have suggested that providing opt-out testing to inmates can help reduce the transmission of the disease—and deaths related to the disease—*outside* of the prison. *Id.* at 4 (finding that 80% of the "liver-related deaths" averted by testing and treating for chronic HCV would have occurred outside of prisons); *see also* Caitlyn Fitzpatrick, *Prisons: The Problem and Solution of Hepatitis C?*, MD Magazine (Sep. 21, 2016) ("One of the findings indicated that presenting prevention programs within the prisons, as well as to those who are

---

[1] Dr. James Aaron Grubbs, M.D. and Dr. Ansal Shah, M.D. have both submitted affidavits averring to the CDC guidelines establish the standard of care for HCV testing and that "SCDC's [current] policies and practices regarding HCV testing deviate from the standard of care." (ECF No. 104-2 at 1–3, 8–10). Both doctors are infectious disease specialists, board certified in internal medicine, and have worked as infectious disease physicians within SCDC.

being released back into the community, could significantly cut infections."), available at https://www.mdmag.com/medical-news/prisons-the-problem-and-solution-of-hepatitis-c.

SCDC does not know the precise number of inmates with chronic HCV but has estimated it to be around 17%. Exhibit 3, Dep. Samuel Soltis, Ph.D., retired Deputy Director of Health Services for SCDC at 42:1–45:21. This agreement will allow SCDC to ascertain the precise number of inmate with chronic HCV and hopefully help prevent the spread of the disease in the prison population and the general public.

Finally, the agreement is fair, adequate, and reasonable. Although discovery is ongoing regarding class claims related to treatment for chronic HCV and Plaintiff Geissler's individual damages claim, the parties have fully exhausted discovery with respect to the testing of SCDC inmates for chronic HCV and the standards of care. If the agreement is approved by the Court, the Testing Class will receive their requested injunctive relief for the Testing Claims and abandon their claim for declarative relief. Counsel for the parties believe that this result is fair.

## CONCLUSION

In sum, the parties have reached a negotiated agreement that SCDC will provide opt-out testing for chronic HCV to all inmates in a logistically manageable fashion. For the foregoing reasons, the parties respectfully request that the Court (1) preliminarily approve the Partial Consent Decree; (2) approve the method of notice to the Testing Class; and (3) set a date for a hearing on or after January 28, 2019, on the fairness, reasonableness, and adequacy of the Partial Consent Decree pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

**[SIGNATURE PAGE TO FOLLOW]**

Respectfully submitted,

| | |
|---|---|
| **YARBOROUGH APPLEGATE LLC** | **AIKEN, BRIDGES, ELLIOTT, TYLER & SALEEBY, P.A.** |
| s/ Christopher J. Bryant<br>David B. Yarborough Jr., Federal ID 7336<br>david@yarboroughapplegate.com<br>Christopher J. Bryant, Federal ID 12538<br>chris@yarboroughapplegate.com<br>291 East Bay Street, Floor 2<br>Charleston, SC 29401<br>(843) 972-0150 office<br>(843) 277-6691 fax | s/Samuel F. Arthur, III<br>Samuel F. Arthur III, Federal ID 7070<br>sfa@aikenbridges.com<br>J. Rufus Bratton III, Federal ID 10332<br>PO Drawer 1931<br>Florence, SC 29503<br>Telephone: 843.669.8787<br>Fax: 843.664.0097 |
| **GUTTMAN, BUSCHNER & BROOKS PLLC** | *ATTORNEYS FOR DEFENDANT* |
| Reuben A. Guttman*<br>rguttman@gbblegal.com<br>Justin S. Brooks*<br>jbrooks@gbblegal.com<br>Paul J. Zweir II*<br>pzweir@gbblegal.com<br>2000 P Street, NW<br>Suite 300<br>Washington, D.C. 20036<br>(202) 800-3001 office | |
| *ATTORNEYS FOR PLAINTIFFS* | |

December 4, 2018
Charleston, South Carolina

* admitted *pro hac vice*

7