## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## FLORENCE DIVISION

| | | |
|---|---|---|
| **RUSSELL GEISSLER**, **BERNARD** | ) | |
| **BAGLEY, AND WILLIE JAMES** | ) | Case No.: 4:17-cv-01746-MBS |
| **JACKSON**, *individually and on behalf of* | ) | |
| *others similarly situated*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | **OPINION AND ORDER** |
| | ) | |
| **BRYAN P. STIRLING**, Director of the South | ) | |
| Carolina Department of Corrections (SCDC), *in* | ) | |
| *his official capacity*; and **JOHN B. MCREE**, | ) | |
| **M.D.**, Division Director of Health and | ) | |
| Professional Services for SCDC, *in his individual* | ) | |
| *capacity*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiffs Russell Geissler, Bernard Bagley, and Willie James Jackson individually and as

class representatives for all those similarly situated bring this action pursuant to Fed. R. Civ. P. 23

against Defendants Bryan P. Stirling and John B. McRee, M.D., alleging that the South Carolina

Department of Corrections ("SCDC") has failed to screen and adequately treat inmates for chronic

Hepatitis C ("HCV").[1]  Plaintiffs, who are in SCDC custody, assert violations of the Eighth

Amendment pursuant to 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act, as

amended, 42 U.S.C. §§ 12131 *et seq.*, and the Rehabilitation Act, as amended, 29 U.S.C. §§ 791

*et seq.*.  Plaintiffs seek injunctive and declaratory relief, and Plaintiff Geissler seeks compensatory

---

[1] Plaintiff Russell Geissler initiated this action on June 30, 2017 with the *pro se* filing of a
prisoner complaint.  ECF No. 1.  The court granted Plaintiff Geissler leave to proceed *in forma
pauperis*, ECF No. 9, and ultimately granted his motion for appointment of counsel, ECF No. 72.
Counsel for Plaintiff Geissler entered his appearance on January 10, 2018.  ECF No. 75.  On
August 21, 2018, Plaintiffs sought and received leave to file a third amended complaint
("Complaint"), which remains the operative pleading.  ECF No. 108.

and punitive damages.  ECF No. 108 at 3.  The court exercises federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

The claims Plaintiffs assert and the relief they seek concern SCDC's alleged failure to (1) properly test prisoners in its custody for HCV and (2) properly treat prisoners in its custody who are afflicted with HCV.  This Order resolves the claims pertaining to SCDC's alleged failure to properly test prisoners for HCV ("Testing Claims"), and has no bearing on the claims related to SCDC's policies and practices for treating inmates for HCV, or on Plaintiff Geissler's individual claims.

Plaintiffs assert that the Centers for Disease Control ("CDC") recommend that HCV testing be administered in a two-step process.  ECF No. 108 at ¶ 42; ECF No. 149 at 2.   The first step determines whether the HCV antibody is present. If the HCV antibody is present, the second step facilitates nucleic acid testing to determine if the HCV infection is current.  *Id.*  The Parties engaged in extensive written discovery and some oral discovery and, as a result of those efforts, SCDC acknowledged that it had not administered the recommended two-step process for all inmates whom SCDC had tested for HCV antibodies.  ECF No. 149 at 3.

On December 4, 2018, the Parties filed a joint motion for preliminary approval of a partial consent decree to resolve the Testing Claims; the Parties subsequently filed a Revised Partial Consent Decree.  On December 5, 2018, the court held a status conference on the joint motion, ECF No. 138; and, on December 6, 2018, the court granted preliminary certification to a class consisting of the following persons: "All current and future inmates in SCDC custody, with the exception of inmates who have already been diagnosed with chronic HCV," ("Testing Class").[2]

---

[2] Hereafter, any reference to "class" is a reference to the Testing Class only.

ECF No. 140. The court also preliminarily certified Plaintiffs Geissler and Bagley as Class Representatives, and preliminarily approved the Revised Partial Consent Decree as well as the notice and procedure for distributing the notice to class members. ECF No. 142. The court set a fairness hearing for February 12, 2019. ECF No. 143.

Prior to the fairness hearing, the Parties filed a Joint Motion for Final Approval of the Revised Partial Consent Decree ("Joint Motion for Approval"). ECF No. 149. Counsel represented in the Joint Motion for Approval that pursuant to the court's order of preliminary approval, counsel posted the Revised Partial Consent Decree on www.SCHepC.com on December 19, 2018, and provided all Circuit Public Defenders with notice of the Revised Partial Consent Decree on January 11, 2019. ECF No. 149-2. SCDC posted notice of the Revised Partial Consent Decree in every housing unit of every SCDC institution and in SCDC's intake facilities, and additionally made information regarding the Revised Partial Consent Decree available on the SCDC website and in the prison libraries. ECF No. 149-3. Counsel informed the court that as of February 5, 2018, they had received more than thirty responses to the notices. Counsel represented that "most of the[] responses have sought additional information or raised concerns regarding treatment," and "[i]nasmuch as the Revised Partial Consent Decree addresses only the Testing Claims, these responses are not being interpreted by counsel for either side as objections to the proposed settlement of the Testing Claims." ECF No. 149 at 6. Counsel stated they nonetheless "noted the concerns stated in the numerous letters submitted and are responding to all correspondence in an effort to further inform the concerned individuals that settlement discussions regarding the Treatment Issue have commenced and are ongoing." *Id.*

The Joint Motion for Approval states that SCDC agrees to provide Class Members with testing for chronic HCV in accordance with CDC guidelines within eighteen months of the court's

approval.  ECF No. 149 at 1-2.  The Joint Motion for Approval represents that the Parties "have fully exhausted discovery on the Testing Claims," *id.* at 7; and states that as of February 5, 2019, SCDC had taken the following actions relevant to the Testing Class: (1) provided notice of the terms of the Revised Partial Consent Decree to current SCDC inmates by posting the court-approved notice in each prison; (2) implemented the CDC's recommended two-step process for diagnosing chronic HCV; (3) tested Plaintiffs Geissler and Bagley for chronic HCV according to the CDC guidelines; (4) offered opt-out testing to 533 inmates and tested 442 inmates, 52 of whom (11.7 percent) tested positive for chronic HCV; (5) provided Plaintiffs' counsel with information about the opt-out process as well as the test results and opt-out forms; and (6) provided Governor McMaster and the state legislature with accurate estimates regarding the scope of chronic HCV in South Carolina's prison system, *id.* at 4 (citing Jan. 24, 2019 Letters from Defendant Stirling to the Honorable Harvey S. Peeler, Jr., President of the South Carolina Senate and the Honorable James H. Lucas, Speaker of the South Carolina House of Representatives, ECF No. 149-1).  The Joint Motion for Approval further states that "[b]ased on the sample of 442 inmates that have already been tested, SCDC estimates that approximately 2,182 inmates are likely to have HCV." *Id.* at 10.  Counsel assert that "[t]he Revised Partial Consent Decree will allow SCDC to ascertain the precise number of inmates with chronic HCV and hopefully help prevent the spread of the disease in the prison population and the general public." *Id.*  Also prior to the fairness hearing, Plaintiffs filed an unopposed motion to appoint class counsel, ECF No. 152, and filed a supplemental memorandum to the Joint Motion for Approval to address the requirements of 18 U.S.C. § 3626.  ECF No. 153.

On February 12, 2019, the court held a fairness hearing pursuant to Rule 23(e)(2) to determine whether the within action satisfies the applicable prerequisites for class action treatment

and whether the proposed Revised Partial Consent Decree is fundamentally fair, reasonable, and adequate, and should be approved by the court. The court certified Plaintiffs' counsel as Class Counsel and heard argument from the Parties. Mr. Bagley, a Class Representative, appeared via videoconference and informed the court that he understood the terms of the settlement and had no objection. Mr. Bagley voiced concern, however, regarding the timeline that would govern SCDC's testing of inmates for HCV; specifically, he highlighted the likelihood that SCDC would release class members from its custody before it could test those members for HCV.[3] The court expressed a similar concern, and queried counsel as to whether the Parties should redefine the Testing Class. The court also inquired as to whether any other class members were in attendance who wished to object to or be excluded from the settlement; no other class members were present or otherwise represented.

On July 22, 2019, the Parties filed a Joint Motion to Substitute Filing, asking to substitute a Partial Settlement Agreement in place of the proposed Revised Partial Consent Decree. ECF No. 166. The Parties represent that the Partial Settlement Agreement and proposed Revised Partial Consent Decree are "substantively identical" and that "no class member will be prejudiced by this substitution of documents," and assert that "because there is no substantive change between the two documents . . . there is no need to repeat the notice period." *Id.* at 2.[4] The court agrees. Accordingly, the court will grant the Joint Motion to Substitute Filing and apply the Rule 23(e) fairness analysis to the Partial Settlement Agreement.

---

[3] Indeed, during the notice period counsel received letters from two prisoners who expected to soon be released from SCDC custody.

[4] The Parties attached the Partial Settlement Agreement and a redlined version of the Revised Partial Consent Decree to the Joint Motion to Substitute Filing. ECF Nos. 166-1, 166-2.

## DISCUSSION

Rule 23(b)(2) provides that a class action may be maintained if Rule 23(a) is satisfied and if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(a) states that one or more members of a class may sue as representative parties on behalf of all members only if the following criteria are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

With respect to the type of class certification Plaintiffs seek, Rule 23(b)(2) certification is reserved for cases where broad, class-wide injunctive or declaratory relief is necessary to redress a group-wide injury. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557 (2011) ("Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class"); *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 329-30 (4th Cir. 2006). A class action is properly certified under Rule 23(b)(2) where the claims seek to define the relationship between the defendant and a group uniformly situated in relation to the defendant, such as where litigants seek institutional reform in the form of injunctive relief. *See Dukes*, 131 S. Ct. at 2557; *Thorn*, 445 F.3d at 329-30.

The Parties seek approval of the Partial Settlement Agreement as settlement of the Testing Claims. The claims asserted by a certified class may be settled only with the court's approval. Fed. R. Civ. P. 23(e). Where the proposal would bind class members, the court may approve it only after a hearing and only on finding that the proposed settlement is fair, reasonable, and adequate. Fed. R.

Civ. P. 23(e)(2). To determine whether the proposal is fair, the court must consider (i) the posture of the case at the time of settlement, (ii) the extent of discovery that has been conducted, (iii) the circumstances surrounding the negotiations, and (iv) the experience of counsel. *See In re Jiffy Lube Securities Litig.*, 927 F.2d 155, 158-59 (4th Cir. 1991). "A proposed class action settlement is considered presumptively fair where there is no evidence of collusion and the parties, through capable counsel, have engaged in arm's length negotiations." *Harris v. McCrackin*, No. 2:03-3845-23, 2006 WL 1897038, at *5 (D.S.C. July 10, 2006) (citing *South Carolina Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991)). In evaluating the adequacy of a class settlement, the court should consider the following: (i) the relative strength of the plaintiffs' case on the merits; (ii) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (iii) the anticipated duration and expense of additional litigation; (iv) the solvency of the defendants and the likelihood of recovery of a litigated judgment; and (v) the degree of opposition to the settlement. *In re Jiffy Lube Securities Litig.*, 927 F.2d at 159. The court must also inquire into whether the parties have entered into an agreement made in connection with the proposal. Fed. R. Civ. P. 23(e)(3).

The court has considered the comments offered by counsel during the fairness hearing, and has read and considered the Partial Settlement Agreement and the record as a whole and finds and orders as follows:

1. CLASS CERTIFICATION – As discussed during the fairness hearing and demonstrated in the Parties' motions and supplemental filings, the Rule 23(a) criteria are met here. Pursuant to Rule 23(b)(2), final certification is appropriate because the relief Plaintiffs seek is an injunction regarding SCDC's policies and practices with respect to how SCDC tests the inmates in its custody for HCV. In certifying a class under Rule 23(b)(2), the court must be satisfied as to its ability

to prescribe a uniform standard of conduct for the defendant that can be applied across the class; less important is whether the court can provide redress for injuries sustained by individual class members. Here, no class member has asked to opt-out of the Testing Class, and the Parties have not sought to include the opt-out right in the conditions of the Class. In addition, the Testing Claims seek only declaratory and injunctive relief; settlement of those claims does not prevent a class member from pursuing monetary damages. Class members who are released from SCDC custody before they can undergo testing for HCV will not receive the benefit of their class membership, but class membership does not require members to forgo any right associated with the Testing Claims.[5] The court is satisfied that the Testing Claims seek relief for conduct that can be enjoined or declared unlawful as to all members of the Testing Class, *Dukes*, 131 S. Ct. at 2558, and that membership in the Testing Class will not pose due process concerns even for those members who may not receive the benefit of the settlement. *See Rice v. City of Philadelphia,* 66 F.R.D. 17, 19 (E.D. Pa. 1974) ("[T]he precise definition of the [(b)(2)] class is relatively unimportant. If relief is granted to the plaintiff class, the defendants are legally obligated to comply, and it is usually unnecessary to define with precision the persons entitled to enforce compliance . . ."). Pursuant to Federal Rule of Civil Procedure 23(b)(2), the court grants final certification of the within action as a class action for purposes of settlement of the Testing Claims only and defines the "Testing Class" as:

> All current and future inmates in SCDC custody, with the exception of inmates who have already been diagnosed with chronic HCV.

---

[5] Pursuant to the Partial Settlement Agreement, class members release claims against Defendants for injunctive relief to receive HCV testing. The only class members who would not receive testing for HCV, and therefore might wish to bring such claims, are those individuals whom SCDC releases from custody before it can administer the tests. Any such claim for injunctive relief by an individual who is no longer in SCDC custody would likely be moot. *See, e.g., Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) ("[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there.").

2.     CLASS REPRESENTATIVE AND CLASS COUNSEL APPOINTMENT –
Pursuant to Rule 23(g), the court grants final certification of Plaintiffs Russell Geissler and Bernard
Bagley as the Class Representatives and further certifies Yarborough Applegate LLC and Guttman,
Buschner & Brooks PLLC as Class Counsel.

3.     NOTICES – Proper notice is "an elementary and fundamental requirement of due
process." *Snider Int'l Corp. v. Town of Forest Heights*, 739 F.3d. 140, 146 (4th Cir. 2014) (citation
omitted).  Notice satisfies due process where it either (1) "is in itself reasonably certain to inform
those affected," or (2) "where conditions do not reasonably permit such notice, . . . the form chosen
is not substantially less likely to bring home notice than other of the feasible and customary
substitutes."  *Id.* (citation omitted).  The form and method for notifying class members of the Revised
Partial Consent Decree and its terms and conditions was in conformity with this court's order of
preliminary approval.  The court is satisfied that the form and method for notifying class members of
the Revised Partial Consent Decree meets the requirements of due process and constitutes the best
notice practicable under the circumstances.  The court agrees that the Partial Settlement Agreement
is substantively identical to the Revised Partial Consent Decree and therefore no further notice period
is necessary.

4.     CONSENT DECREES RELATING TO PRISON CONDITIONS – Pursuant to 18
U.S.C. § 3626(a), the court finds that the Partial Settlement Agreement is narrowly drawn, extends
no further than is necessary to correct the alleged constitutional violations, and is the least intrusive
means necessary to correct the alleged constitutional violations.

5.     FAIRNESS AND ADEQUACY – The court finds that settlement of the Testing
Claims, on the terms and conditions set forth in the Partial Settlement Agreement, is in all respects
fundamentally fair, reasonable, adequate, and in the best interest of the class members.  In so finding,

the court has considered the specific public interest at stake and the strength of Plaintiffs' case, along with the posture of the litigation, the complexity, expense, and probable duration of further litigation, the circumstances surrounding the Parties' negotiations, the experience of counsel, and SCDC's solvency.[6] *See In re Jiffy Lube Securities Litig.*, 927 F.2d at 158-59.  Specifically, the Parties have exhausted discovery on the Testing Claims and are well-apprised of the merits of the case.  Further litigation would be expensive and time consuming and would not likely yield a result more favorable than the Partial Settlement Agreement.  As the Parties state in their Joint Motion for Approval, "[t]he purpose of the proposed settlement is to provide Plaintiffs with the injunctive relief they requested: providing SCDC inmates with testing for chronic HCV that meets the medical standard of care asserted by Plaintiffs."[7]  ECF No. 149 at 7.  Additionally, there is no evidence or suggestion of bad faith or collusion, and counsel represented during the fairness hearing that the Partial Settlement Agreement is the result of settlement negotiations conducted at arm's length and in good faith.  *See Kirven v. Central States Health & Life Co. of Omaha*, C/A No. 3:11–2149–MBS, 2015 WL 1314086, at *5 (D.S.C. Mar. 23, 2015) (noting "[a]bsent evidence to the contrary, the court may presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion") (citing *Muhammad v. Nat'l City Mortg., Inc.,* C/A No. 2:070428, 2008 WL

---

[6] The Parties state in the Joint Motion for Approval that SCDC's solvency and the likelihood of recovery of a litigated judgment are not at issue because Plaintiffs seek only injunctive relief. ECF No. 149 at 9. However, the HCV testing that Defendants agree to undertake necessarily requires an expenditure of funds. Indeed, the Parties include in the Partial Settlement Agreement the provision that, for the purpose of seeking remedial action against Defendants, "an individual shall not be deemed to have acted in bad faith if budgetary constraints are the reason for his or her failure to satisfy the terms of the Testing Agreement, so long as he or she has made good faith efforts to obtain the necessary funding from all potential sources."  ECF No. 166-1 at 7. The expense of testing for HCV notwithstanding, the Parties have not indicated in their papers and did not suggest during the fairness hearing that SCDC does not have or would not be able to procure the necessary funding to carry out the agreed upon testing.

[7] The Parties represent in the Joint Motion for Approval that Plaintiffs are "foregoing any declarative relief related to the Testing Claims."  ECF No. 149 at 7.

5377783, at *4 (S.D.W. Va. Dec. 19, 2008) (further citation omitted)). With respect to Class Counsel, the inquiry into the adequacy of legal counsel focuses on whether counsel is competent, dedicated, qualified, and experienced enough to conduct the litigation and whether there is an assurance of vigorous prosecution. *In re Serzone Prod. Liab. Litig.,* 231 F.R.D. 221, 239 (S.D.W. Va. 2005) (citation omitted). As discussed at the fairness hearing, the court finds that Class Counsel meet these criteria. Furthermore, Mr. Bagley informed the court at the fairness hearing that he was satisfied with the representation provided by Class Counsel, and no class member has contested the appointment of Class Counsel.

The court has also considered the concerns voiced by Mr. Bagley and two other class members regarding the likelihood that certain class members will be released from custody before SCDC can test them for HCV. The Parties assert in the Joint Motion for Approval, and represented during the fairness hearing, that pursuant to the Partial Settlement Agreement over 18,000 inmates will be tested for HCV. The Parties further represent that due to the logistical difficulties involved in administering the test in a correctional setting, SCDC will test inmates according to facility rather than according to individual release dates. The Parties further represent that SCDC has nonetheless "set an aggressive testing schedule and is hopeful that it will be able to complete the testing for all currently incarcerated inmates by September 2019." ECF No. 149 at 9. The court understands and is sympathetic to the concern that as SCDC works to administer the test facility-by-facility, some class members will be released from custody before SCDC can test them for HCV. However, to the extent that concern constitutes opposition to the settlement, such opposition is outweighed by the benefit the Testing Class and the public will derive from the Partial Settlement Agreement.[8] In addition, to the extent

---

[8] The Joint Motion for Approval posits that an estimated one percent "of the noninmate [sic] population has chronic HCV," and that the number rises to an estimated 17 percent "for the inmate population." ECF No. 149 at 10 (citing ECF No. 136-2, Teianhua He, M.D. et al.,

that concern could be interpreted as an objection to the Partial Settlement Agreement, the court overrules the objection.

Finally, counsel represented during the fairness hearing that the Parties have entered into no other agreement with respect to the Partial Settlement Agreement. Accordingly, for these reasons, the court finds the Partial Settlement Agreement to be fair, adequate, and reasonable.

6. SETTLEMENT TERMS – The Partial Settlement Agreement is granted final approval and shall be consummated in accordance with the terms and provisions thereof, except as may be amended by any order issued by this court. The Parties are hereby directed to perform the terms of the Partial Settlement Agreement. All class members who were provided notice of the Partial Settlement Agreement are bound by the terms of it.

7. ATTORNEY FEES – Plaintiffs' attorneys have not sought fees at this time.

8. FUTURE ACTIONS PROHIBITED – The court hereby permanently enjoins and restrains all class members from commencing or prosecuting any action, suit, claim, or demand against Defendants for declaratory or injunctive relief based on the Testing Claims.

9. NO ADMISSION OF LIABILITY – This order is not, and will not, be construed as an admission by Defendants of any liability or wrongdoing in this or in any other proceeding.

10. CONTINUING JURISDICTION OVER SETTLEMENT – The court hereby retains continuing and exclusive jurisdiction over the Parties and all matters relating to the within action and

---

*Prevention of Hepatitis C by Screening and Treatment in U.S. Prisons*, Annals of Internal Medicine (Nov. 24, 2015) (SCDC Documents for Informal Discovery Response 000001)). The Parties explain that "[a]s individuals move in and out of the prison system and are unaware of their HCV status, they can transmit the disease to others," and that "[s]tudies have suggested that providing opt-out testing to inmates can help reduce the transmission of the disease—and deaths related to the disease—outside of the prison." *Id.*

Partial Settlement Agreement, including the administration, interpretation, construction, effectuation, enforcement, and consummation of the settlement and this order, and attorneys' fees.

## CONCLUSION

The Joint Motion to Substitute Filing, ECF No. 166, is **GRANTED** and the Partial Settlement Agreement, ECF No. 166-1, is substituted for the Revised Partial Consent Decree. The Joint Motion for Final Approval, ECF No. 149, is **GRANTED** and the Partial Settlement Agreement, ECF No. 166-1, is **APPROVED**.

**IT IS SO ORDERED.**


Charleston, South Carolina                    /s/Margaret B. Seymour
August 5, 2019                                Margaret B. Seymour
                                             Senior United States District Judge