**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

| | |
|---|---|
| **RUSSELL GEISSLER**, **BERNARD BAGLEY,** ) AND WILLIE JAMES JACKSON, ) *individually and on behalf of others similarly* ) *situated*, ) ) *Plaintiff,* ) ) *vs.* ) ) **BRYAN P. STIRLING**, Director of the South ) Carolina Department of Corrections (SCDC), *in* ) *his official capacity*; and **JOHN B. MCREE**, ) **M.D.**, Division Director of Health and ) Professional Services for SCDC, *in his individual* ) *capacity,* ) ) *Defendants*. ) )  | Case No.: 4:17-cv-01746-MBS<br><br>**JOINT MOTION FOR APPROVAL AND ENTRY OF CONSENT DECREE** |

Plaintiff Willie James Jackson (the "Treatment Class Representative") and Defendant Bryan

Stirling in his official capacity as director of the South Carolina Department of Corrections ("SCDC")

now move for final approval of the Proposed Consent Decree for Chronic Hepatitis C Treatment,

(ECF No. 178) (the "Consent Decree"), that the Court preliminarily approved on January 23, 2020,

ECF No. 183. The Consent Decree resolves all claims for injunctive and declaratory relief regarding

South Carolina Department of Corrections testing and treatment policies and practices related to

chronic Hepatitis C ("HCV"). This Consent Decree would resolve all such claims for the class of all

current and future inmates in SCDC custody who have been or will be diagnosed with Chronic HCV (the "Treatment Class").[1]

Ordinarily, the introduction to this memorandum would have ended here. Yet, given the subject matter of this settlement, the undersigned feel compelled to say more. Shortly after the Court granted preliminary approval to this agreement, the world became a different place. Back on January 23rd of this year, no one – save for a few epidemiologists – would have envisioned that our nation would be under quarantine, 80,000 Americans would be dead, more than one million Americans would be sick, and the nation's judicial system would be struggling to accommodate our rule of law the backbone of which is an open court and face-to-face confrontation.

The fact that that this Court must conduct a fairness hearing telephonically on May 20, 2020 is an ironic reminder of the importance of efforts – like the settlement now before this Court – in preventing the spread of disease in our complex world. Though this agreement addresses only Hepatitis C in the SCDC system, it will protect more than those inmates. It is an agreement that will identify, treat, and prevent the spread of a deadly virus throughout the prison system and into the community. Though implementation of this agreement will require time and money, those who read about this case in the papers will hopefully now better appreciate the importance of preventing the spread of disease.

We ask the Court not only to give final approval to this settlement but also – to the extent the Court opines on the matter – to take note of what has become a paramount need to work collegially – as was done here – to prevent the spread of deadly illnesses.

---

[1] The Consent Decree also incorporates, by reference, the settlement agreement the parties reached earlier regarding HCV testing issues (the "Testing Claims"), which the Court approved on August 5, 2019. ECF No. 168.

**BACKGROUND**

On June 30, 2017, Plaintiff Russell Geissler filed a *pro se* complaint seeking, among other things, (1) treatment for his chronic HCV and (2) treatment for all SCDC inmates with chronic HCV (the "Treatment Claims"). (ECF No. 1 at 6). The Court appointed counsel for Plaintiff Geissler on January 9, 2018, in light of "the state of the law regarding the issue." (ECF No. 72 at 2). The parties were unable to negotiate a settlement for Plaintiff Geissler's individual claims, and appointed counsel associated additional counsel and filed the Second Amended Class Complaint seeking comprehensive testing of all SCDC inmates for chronic HCV and treatment for those individuals diagnosed with chronic HCV.  (ECF No. 88).

At the time the Second Amended Complaint was filed, all counsel were aware that SCDC did not have a comprehensive testing program that screened inmates for chronic HCV.  The parties subsequently engaged in extensive written and some oral discovery.  Through this process, SCDC acknowledged that the two-step process has not been completed in all cases where an inmate has been tested for HCV antibodies.

On August 21, 2018, Plaintiffs' counsel filed the Third Amended Complaint, in part to reflect the new testing information.  (ECF No. 108 at ¶ 1).  In addition, Plaintiffs added two named plaintiffs to the action. Plaintiff Willie James Jackson, an inmate serving a life sentence in SCDC, was added because he was diagnosed with chronic HCV in 2008 while in SCDC custody.  In the ten years between that diagnosis and joining this lawsuit, Jackson did not receive treatment under the old interferon protocol or the new DAA protocol.

Plaintiff Bernard Bagley was added to the action because SCDC had refused his requests to have testing for chronic HCV, despite the fact that he was (a) born between 1945 and 1965, and (b) received a blood transfusion before 1992.  The CDC recommends testing for both groups of

3

individuals.         CDC, *Testing   Recommendations   for   Hepatitis   C   Virus   Infection*,
https://www.cdc.gov/hepatitis/hcv/guidelinesc.htm (last visited Dec. 3, 2018).

In November 2018, the Parties reached an agreement for settlement of Plaintiffs' Testing
Claims, requiring opt-out testing for all SCDC inmates. (Dkt. 166-1).   The Court granted final
approval of the Partial Settlement Agreement on August 5, 2019 (Dkt. 168).   Plaintiff Bagley is the
representatives for the Testing Class, (ECF No. 125).   In the period between the agreement and
approval, SCDC began testing its inmate population.

As of April 20, 2020, over 14,000 inmates had been tested for HCV antibodies. Of the tested
inmates, 1,327 currently incarcerated individuals have confirmed chronic HCV diagnoses. That
number represents 7.46 % of the current inmate population or 11.48 % of the current inmate
population that was tested.

The Partial Settlement Agreement addressed only the Testing Claims, and the Parties
continued to discuss terms of settlement that addressed the remaining Treatment Claims. Plaintiff
Jackson, the Treatment Class Representative,[2] has asserted that Defendants have violated the Eighth
Amendment rights of the Treatment Class by failing to provide immediate treatment to all inmates
who have tested positive for chronic HCV pursuant to CDC guidelines. Defendants deny any
constitutional violations with respect to the Treatment Claims.   All parties recognize the inherent
uncertainty and risks of litigation, and the time and costs involved for both parties in continuing to
litigate the Treatment Claims.

---

[2] Plaintiff Geissler is no longer incarcerated in an SCDC facility and, therefore, is no longer available to serve as a
Treatment Class Representative. Plaintiff Bagley tested negative for HCV and, accordingly, does not need treatment
for chronic HCV.

The parties engaged in extensive settlement discussions since Plaintiff Geissler received appointed counsel, including in-person mediation. On October 31, 2019, the Treatment Class Representative and Defendant Stirling agreed to the terms contained in the Consent Decree, ECF No. 178-2, and on January 23, 2020, the Court granted preliminary approval of the Consent Decree, ECF No. 183. Inmates have already been or are currently being treated for HCV.

**LEGAL STANDARD**

A district court considering whether to enter a consent decree "should be guided by the general principle that settlements are encouraged." *United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999). But "before entering a consent decree," the Court must be satisfied that the agreement is "not illegal, a product of collusion, or against the public interest" and "is fair, adequate, and reasonable." *Id.* (quoting *United States v. Colorado*, 937 F.2d 505, 509 (10th Cir. 1991) (internal quotation marks omitted)). Although "this assessment does not require the court to conduct 'a trial or a rehearsal of the trial,' the court must take the necessary steps to ensure that it is able to reach 'an informed, just and reasoned decision.'" *Id.* (quoting *Flinn v. FMC Corp.*, 528 F.2d 1169, 1172–73 (4th Cir. 1975)).

Further, pursuant to the Prison Litigation Reform Act, 18 U.S.C. § 3626 ("PLRA"), a consent decree containing injunctive relief in a case involving "prison conditions" may not be approved unless the district court finds that the injunctive relief is (1) narrowly drawn, (2) extends no further than is necessary to correct the violation of the federal right, and (3) is the least intrusive means necessary to correct the violation of the federal right.

**ARGUMENT**

The Court should approve the Consent Decree because it is (1) fair, adequate, and reasonable, (2) not illegal or the result of collusion, and (3) in the public interest. Moreover, it is (1) narrowly

drawn, (2) extends no further than necessary to correct the asserted violation of a federal right, and (3) is the least intrusive means necessary to correct the asserted violation of a federal right.

### A.    FAIRNESS, ADEQUACY, AND REASONABLENESS

With respect to the fairness, adequacy, and reasonableness of the Consent Decree, the parties adopt the reasons set forth in their Joint Motion for Preliminary Approval of Proposed Consent Decree. ECF No. 178 at 2-7 (noting extensive discovery and arms-length negotiations, as well as the fact that the agreement meets the medical standard of care and provides Plaintiffs with their desired injunctive relief).

The lack of objections to the Consent Decree also supports its fairness, adequacy and reasonableness. Defendants notified the South Carolina Attorney General's Office and the United States Department of Justice of the Consent Decree pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, and neither the State of South Carolina nor the United States objected to this settlement. Likewise, counsel for the parties complied with the forms of notice approved by the Court and have not received any objections to the Consent Decree.  *See* Ex. 1, Decls. of  Samuel F. Arthur, III, James M. Griffin, and Christopher J. Bryant.

As stated in the Joint Motion for Preliminary Approval, this agreement is also in the public interest. As individuals with chronic HCV move in and out of the prison system, they can transmit the disease to others.  Teianhua He, M.D. et al., *Prevention of Hepatitis C by Screening and Treatment in U.S. Prisons*, Annals of Internal Medicine at 3 (Nov. 24, 2015) (identifying a model for how the disease spreads vis-à-vis individuals moving in and out of the prison system). Based on the testing results as of April 20, 2020, the current estimates of the chronic HCV rate within SCDC is around 11.5%. This agreement will allow SCDC to lower this rate in an expeditious manner, given the limitations presented by treating a chronic disease in a prison setting.

**B.    PRISON LITIGATION REFORM ACT**

With respect to the PLRA, no binding Fourth Circuit precedent appears to address whether a grievance regarding medical treatment constitutes a prison condition within the meaning of § 3626, but case law predating § 3626 includes "medical treatment" as an element of prison conditions. *Kirby v. Blackledge*, 530 F.2d 583, 587 (4th Cir. 1976) (identifying "inadequate . . . medical treatment" as one of the grievances that composed the "combination of conditions" prisoners complained about). Other courts have concluded that medical treatment is a prison condition within the meaning of the PLRA.  *E.g.*, *Bradley v. Crowther*, No. 2:17-CV-93 TS, 2017 WL 4325804, at *3 (D. Utah Sept. 27, 2017) ("Given the Supreme Court's broad interpretation of the term 'prison conditions,' Plaintiff's argument that failure to provide medical treatment is not meant to be encompassed by [the Prison Litigation Reform Act] must fail.").

### 1.    The Alleged Violation of a Federal Right

Plaintiffs have alleged that chronic Hepatitis C ("HCV") is a serious medical need within the meaning of the Eighth Amendment, and that SCDC and its policymakers demonstrated deliberate indifference to this serious medical need by failing to properly test and treat for chronic HCV. (ECF No. 108 ¶¶ 103–114). To establish this claim, which is the relevant "federal right" for purposes of 18 U.S.C. § 3626, the evidence must demonstrate that Defendant Stirling, in his official capacity ("SCDC" or "Defendant"), acted with "deliberate indifference"—which is a subjective standard—to Plaintiffs' "serious medical needs"—which is an objective standard. *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). While SCDC does not admit any constitutional violations, (ECF No. 141-1 at 22), Plaintiffs assert that there is evidence in the record that could support findings of both serious medical need and deliberate indifference.

As a threshold matter, courts have consistently held that chronic HCV constitutes a serious medical need. *E.g.*, *Abu-Jamal v. Wetzel*, No. 3:16-CV-2000, 2017 WL 34700, at \*11 (M.D. Pa. Jan. 3, 2017) ("Chronic hepatitis C constitutes a serious medical need."), *appeal dismissed sub nom. Abu-Jamal v. Sec'y PA Dept of Corr*, No. 17-1125, 2017 WL 3123434 (3d Cir. Apr. 13, 2017), and *appeal dismissed sub nom. Abu-Jamal v. Sec'y PA Dept of Corr*, No. 17-1156, 2017 WL 3160959 (3d Cir. Apr. 14, 2017); *Hoffer v. Jones*, 290 F. Supp. 3d 1292, 1299 (N.D. Fla. 2017) ("[I]t is not surprising that Plaintiffs' expert describes HCV as 'a serious medical need.' Nor should it be surprising that this Court finds chronic HCV to be a serious medical need.") (internal citation omitted), citing *Loeber v. Andem*, 487 Fed. App'x 548, 549 (11th Cir. 2012) (unpublished) ("That Hepatitis C presents a serious medical need is undisputed.") and *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004) ("HIV and hepatitis meet either of the[ ] definitions [of serious medical need]. The defendants wisely do not deny that [plaintiff] has serious medical needs." (alterations in original)); *Johnson v. Wright*, 234 F. Supp. 2d 352, 360 (S.D.N.Y. 2002) ("Case law also recognizes that Hepatitis C qualifies as a serious condition for purposes of an Eighth Amendment analysis.").

In addition, as detailed in Plaintiffs' Supplemental Memorandum in Support of Final Approval of the Revised Partial Consent Decree, (ECF No. 153, at 2-5), Plaintiffs' assert that evidence in the record would support a finding of deliberate indifference on SCDC's part.

## 2.     **The Agreed-Upon Relief**

The relief provided by the consent decree is narrowly drawn, extends no further than is necessary to correct the alleged violation of the 8th Amendment, and is the least obtrusive means necessary to correct the alleged violation of the 8th Amendment. Under the Consent Decree, SCDC agrees to:

- Utilize the $10 million of funding it received for the 2019-2020 fiscal year to directly address treatment for Chronic HCV and seek the same recurring funds for the next four years;

- Offer all inmates testing for Chronic HCV consistent with the approved Partial Settlement Agreement (the "Testing Agreement," Dkt. 166-1);

- Provide treatment, including direct-acting antiviral medication, to inmates diagnosed with Chronic HCV as follows:

  o Prior to April 22, 2022:

    ▪ begin treatment for all inmates diagnosed on or before October 15, 2019 with Acuity Level 1, as defined in the Consent Decree, no later than April 15, 2020, provided said inmate has at least six (6) months remaining on his or her sentence at the time treatment begins;

    ▪ begin treatment for all inmates diagnosed after October 15, 2019 with Acuity Level 1, as defined in the Consent Decree, no later than 180 days after diagnosis, provided said inmate has at least six (6) months remaining on his or her sentence at the time treatment begins;

    ▪ begin treatment for all inmates diagnosed on or before October 15, 2019 with an Acuity Level OTHER THAN 1, as defined in the Consent Decree, no later than July 22, 2021, provided said inmate has at least six (6) months remaining on his or her sentence at the time treatment begins; and

    ▪ begin treatment for all inmates diagnosed after October 15, 2019, but before April 22, 2022, with an Acuity Level OTHER THAN 1, as defined in the Consent Decree, no later than April 22, 2022 or 180 days, whichever is later, provided said inmate has at least six (6) months remaining on his or her sentence at the time treatment begins

  o After April 22, 2022, if not sooner:

    ▪ begin treatment for all inmates diagnosed with Chronic HCV within 120 days of diagnosis, provided said inmate has at least six (6) months remaining on his or her sentence at the time treatment begins

    ▪ any inmate who does not have at least six (6) months remaining on his or her sentence at the time treatment could begin will be provided discharge planning and a link to a resource for treatment upon release;

- Report progress every four months until the program is fully implemented; and

9

- Provide notice of the terms of the Consent Decree to current SCDC inmates by posting the proposed agreement in each prison.

Notice was provided as set forth in the Consent Decree and by the Court.  In addition, SCDC has already begun performing the requirements of the Consent Decree, and will resume doing so a reasonable time after the restrictions on visitations and movement imposed for COVID 19 are lifted.

### C.    ATTORNEYS' FEES AND COSTS

Finally, Plaintiffs intend to submit their petition for fees and costs to mediation with Magistrate Judge Mary Gordon Baker after the Court's approval of the Consent Decree. To the extent the parties are unable to reach a negotiated agreement on fees and costs, Plaintiffs' will file a fee petition with this Court.  Because there is no common fund, fees and costs do not impact the obligations of Defendants under the terms of the Consent Decree.

### CONCLUSION

In sum, more than two years after Plaintiff Russell Geissler initiated this action *pro se*, the parties have reached a negotiated agreement that SCDC will provide opt-out testing for chronic HCV to all inmates and treat those inmates who test positive for chronic HCV in a logistically manageable fashion.  For the foregoing reasons, the parties respectfully request that the Court grant final approval to the Consent Decree.


Dated: May 18, 2020                                Respectfully submitted,

**GRIFFIN | DAVIS**                              **AIKEN, BRIDGES, ELLIOTT, TYLER & SALEEBY, P.A.**

s/ James M. Griffin                              s/Samuel F. Arthur, III
James M. Griffin, Fed Id 1053                    Samuel F. Arthur III, Federal ID 7070
jgriffin@griffindavislaw.com                     sfa@aikenbridges.com
4408 Forest Drive, Suite 300                     J. Rufus Bratton III, Federal ID 10332
P.O. Box 999 (29202)                             jrb@aikenbridges.com
Columbia, S.C. 29206

10

(803) 744-0800

**GUTTMAN, BUSCHNER & BROOKS PLLC**

Reuben A. Guttman*
rguttman@gbblegal.com
Justin S. Brooks*
jbrooks@gbblegal.com
Nancy Gertner**
ngertner@gbblegal.com
Caroline Poplin*
cpoplin@gbblegal.com
Elizabeth H. Shofner*
lshofner@gbblegal.com
Paul Zwier*
pzwier@gbblegal.com
2000 P Street, NW, Suite 300
Washington, D.C. 20036
(202) 800-3001

**PERKINS COIE LLP**

s/ Christopher J. Bryant
Christopher J. Bryant, Federal ID 12538
cbryant@perkinscoie.com
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
(202) 654-6200

*Attorneys for Plaintiffs*

* admitted *pro hac vice*
** *pro hac vice* pending

PO Drawer 1931
Florence, SC 29503
Telephone: 843.669.8787
Fax: 843.664.0097

*Attorneys for Defendant*

11