IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Russell Geissler, Bernard Bagley, and Willie James Jackson, individually and on behalf of others similarly situated, | ) ) ) ) C/A No. 4:17-1746-MBS |
| Plaintiffs, | ) ) ) |
| vs. | ) ) ) |
| Bryan P. Stirling, Director of the South Carolina Department of Corrections (SCDC), in his official capacity; and John B. McRee, M.D., Division Director for Health and Professional Services for SCDC, in his individual capacity, | ) **ORDER AND OPINION** ) ) ) ) ) ) ) |
| Defendants. | ) ) |

Plaintiffs Russell Geissler, Bernard Bagley, and Willie James Jackson (together, "Plaintiffs") are or were inmates in custody of the South Carolina Department of Corrections (SCDC). Defendant Bryan P. Stirling is the Director of SCDC, and Defendant John B. McRee, M.D. is the Division Director for Health and Professional Services for SCDC (together, "Defendants"). This matter is before the court on the parties' joint motion for final approval and entry of a consent decree, which motion was filed on May 18, 2020.

I. FACTS

On June 30, 2017, Geissler, proceeding pro se, filed the within action, alleging that his rights had been violated under the Fifth, Eighth, and Fourteenth Amendments because he had been diagnosed with Hepatitis C ("HCV") on January 16, 2014, but had been denied treatment during his incarceration. An amended complaint was filed on October 6, 2017. The court appointed counsel for Geissler on January 9, 2018. A second amended complaint containing class allegations was filed

on March 13, 2018, and a third amended complaint adding Bagley and Jackson as Plaintiffs was filed on August 21, 2018. In the third amended complaint, Geissler, Bagley, and Jackson (together, "Plaintiffs") sought to bring a class action consisting of:

> All current and future inmates in SCDC custody who have been or will be diagnosed with chronic HCV, who have at least 24 weeks remaining on their sentences and a life expectancy of more than one year, with the exception of inmates who are already receiving or have already completed treatment with DAA medications (the HCV-Positive Class); and

> All current and future inmates in SCDC custody who have been diagnosed with chronic HCV, who have at least 24 weeks remaining on their sentences and a life expectancy of more than one year, with the exception of inmates who are already receiving or have already completed treatment with DAA medications (the HCV-Diagnosed Class).

ECF No. 108, ¶ 93.

Plaintiffs allege that the Food and Drug Administration has approved direct-acting antiviral drugs that have a 95% cure rate after a 12-week course of treatment. Plaintiffs contend that protocols have been developed and approved by the Centers for Disease Control and Prevention ("CDC"), and that the standards of care are now well-established in the medical community. Plaintiffs note that, according to the CDC, one-third of the inmate population is infected with chronic HCV, which would translate to approximately 6,000 SCDC inmates. According to Plaintiffs, SCDC, through its Policies HSP-4000.12 and HSP-4000.13, had a practice of not screening inmates for HCV except in limited circumstances, despite references to studies demonstrating fibrosis or cirrhosis can be predicted utilizing certain testing procedures. Plaintiffs allege testing for and treating HCV constitute "medically necessary care" that has been denied in contravention of SCDC Policy HS-18.15, Levels of Care.

Plaintiffs state that SCDC implemented Policy HS-19-09, Hepatitis C, in 2016. Plaintiffs contend that Policy HS-19-09 arbitrarily determines when inmates would receive testing and treatment, and that the Policy's provisions were contrary to the standard of care recognized in the medical community. According to Plaintiffs, SCDC "has been aware of the serious and substantial issues regarding inmates with chronic HCV for more than half a decade but has failed to make any meaningful changes to bring its HCV testing and treatment policies and practices in line with the standard of care. SCDC has no concept of what percentage of its inmate population has chronic HCV. Without judicial intervention, these practices are likely to continue." ECF No. 108, ¶ 81.

Geissler, as noted, suffers from HCV but has not been treated; Bagley was born between 1945 and 1965, received a blood transfusion in 1977, and exhibits symptoms of HCV but has not been tested; Jackson also suffers from HCV but has not been treated. Thus, Geissler, Bagley, and Jackson seek to represent the HCV-Positive Class (currently denominated the "Testing Class"), and Geissler and Jackson seek to represent the HCV-Diagnosed Class (currently denominated the "Treatment Class"). In the third amended complaint, Plaintiffs assert causes of action under 42 U.S.C. § 1983 against Stirling for violation of their rights under the Eighth Amendment (Count I); against Stirling under the Americans with Disabilities Act, 42 U.S.C. §§ 12131, et seq. (Count II); against Stirling under the Rehabilitation Act, 29 U.S.C. §§ 791-794a (Count III); and under 42 U.S.C. § 1983 against McRee for violation of their rights under the Eighth Amendment (Count IV). Plaintiffs seek class certification, declaratory and injunctive relief, compensatory and punitive damages for Geissler, and attorneys' fees and costs. The court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. There is no dispute that Plaintiffs have exhausted their administrative remedies as required by 42 U.S.C. § 1997e.

On December 4, 2018, the parties filed a joint motion for preliminary approval of a partial consent decree with respect to the Testing Class. The court held a hearing on the matter on December 6, 2018. Also on December 6, 2018, the court issued a stipulation and preliminary order for class certification pursuant to Fed. R. Civ. P. 23(a) and (b)(2) of a Testing Class comprised of:

> All current and future inmates in SCDC custody, with the exception of inmates who have already been diagnosed with chronic HCV.

ECF No. 140.

The proposed partial consent decree resolved the testing issues raised in the third amended complaint and was entered into without prejudice to the treatment issues raised in the third amended complaint. On February 12, 2019, the court held a fairness hearing pursuant to Fed. R. Civ. P. 23(e)(2) to determine whether the proposed Testing Class satisfied the applicable prerequisites for class action treatment and whether the proposed partial consent decree was fair, reasonable, and adequate, and should be approved by the court. The court took the matter of final approval of the class and proposed partial consent decree under advisement.

On March 7, 2019, on motion of the parties, the court appointed Magistrate Judge Mary Gordon Baker to serve as mediator to assist the parties in reaching a settlement of the remaining issues in the case, i.e., (1) injunctive and declaratory relief for inmates diagnosed with chronic HCV, and (2) Plaintiff Russell Geissler's individual damages claim. ECF No. 159.

On July 22, 2019, the parties filed a joint motion to substitute a partial settlement agreement in place of the partial consent decree. On August 5, 2019, the court determined that the partial settlement agreement was substantively identical to the partial consent decree, such that there was no need to repeat the notice period. Accordingly, the court granted the motion to substitute. The

court further reviewed the applicable Rule 23(a) and (b)(2) factors, granted final certification of Geissler and Bagley as Class Representatives, and certified Yarborough Applegate LLC and Guttman, Buschner & Brooks PLLC as Class Counsel pursuant to Fed. R. Civ. P. 23(g).  The court approved the Testing Class pursuant to Fed. R. Civ. P. 23(a) and (b)(2), found that the notice to class members met requirements of due process, and found that the partial settlement agreement was narrowly drawn and comported with the mandates of 18 U.S.C. § 3626(a).  The court considered the specific public interest at stake; the strength of Plaintiffs' case; the posture of the litigation; the complexity, expense, and probable duration of further litigation; the circumstances surrounding the parties' negotiations; the experience of counsel; and SCDC's solvency, and determined that the partial settlement agreement was fundamentally fair, reasonable, adequate, and in the best interest of the class members.  ECF No. 168.

The parties engaged in extensive settlement discussions with the able participation of Magistrate Judge Baker as mediator.  On November 27, 2019, the parties filed a joint motion for preliminary approval of proposed consent decree with respect to the Treatment Class, denominated as follows:

> The "Treatment Class" refers to all current and future inmates in SCDC custody who have been or will be diagnosed with Chronic HCV.

ECF No. 178-2, 7.

Under the proposed consent decree, Stirling, on behalf of SCDC, agreed to:

A.   Utilize the $10 million of funding it received for the 2019-2020 fiscal year to directly address treatment for Chronic HCV and seek the same recurring funds for the next four years;

B.   Offer all inmates testing for Chronic HCV consistent with the approved Partial Settlement Agreement (the "Testing Agreement," Dkt. 66-1);

    C.    Provide treatment, including direct-acting antiviral medication, to inmates diagnosed with Chronic HCV as follows:

        a.    Prior to April 22, 2022:

            i. begin treatment for all inmates diagnosed on or before October 15, 2019 with <u>Acuity Level 1</u>, as defined in the Proposed Consent Decree, no later than <u>April 15, 2020,</u> provided said inmate has at least six (6) months remaining on his or her sentence at the time treatment begins;

            ii. begin treatment for all inmates diagnosed <u>after October 15, 2019</u> with <u>Acuity Level 1</u>, as defined in the Proposed Consent Decree, no later than <u>180 days after diagnosis,</u> provided said inmate has at least six (6) months remaining on his or her sentence at the time treatment begins;

            iii. begin treatment for all inmates diagnosed on or before <u>October 15, 2019</u> with an <u>Acuity Level OTHER THAN 1</u>, as defined in the Proposed Consent Decree, no later than <u>July 22, 2021,</u> provided said inmate has at least six (6) months remaining on his or her sentence at the time treatment begins; and

            iv. begin treatment for all inmates diagnosed <u>after October 15, 2019,</u> but before April 22, 2022, with an <u>Acuity Level OTHER THAN 1</u>, as defined in the Proposed Consent Decree, no later than <u>April 22, 2022 or 180 days</u>, whichever is late, provided said inmate has at least six (6) months remaining on his or her sentence at the time treatment begins.

        b.    After April 22, 2022, if not sooner:

            i.    begin treatment for all inmates diagnosed with Chronic HCV within 120 days of diagnosis, provided said inmate has at least six (6) months remaining on his or her sentence at the time treatment begins

        c.    Any inmate who does not have at least six (6) months remaining on his or her sentence at the time treatment could begin will be provided discharge planning and a link to a resource for treatment upon release;

    D.    Report progress every four months until the program is fully implemented; and

      E.      Provide notice of the terms of the Proposed Consent Decree to current SCDC inmates by posting the proposed agreement in each prison.

ECF No. 178, 4-5.

The court held a hearing on January 14, 2020, at which Jackson, the proposed Treatment Class Representative, attended via videoconference. Subsequent to the January 14, 2020 hearing, Jackson expressed a number of reservations in a motion to the court. See ECF No. 189. After speaking with counsel, Jackson's concerns were allayed and the motion was withdrawn. ECF No. 195. On January 23, 2020, the court issued an order in which it found that preliminary approval of the proposed consent decree was appropriate and that notice should be provided to the proposed Treatment Class. ECF No. 183. A fairness hearing was scheduled for April 29, 2020. However, because of the COVID-19 pandemic, in-person proceedings were restricted, as reflected in the various standing orders issued by Chief Judge R. Bryan Harwell. Accordingly, the fairness hearing was rescheduled for May 20, 2020.

The parties filed a joint motion for approval and entry of consent decree on May 18, 2020. The parties informed the court that, as of April 20, 2020, over 14,000 inmates had been tested for HCV in accordance with the settlement agreement. Of these inmates, 1,327 individuals have confirmed chronic HCV diagnoses. According to the parties, that number represents 7.46% of the current inmate population, or 11.48% of the current inmate population that was tested.[1] The parties further informed the court that inmates have been or currently are being treated for HCV in accordance with the consent decree. Counsel submitted statements pursuant to 28 U.S.C. § 1746 that

---

[1] The parties also informed the court that Geissler is no longer in the custody of SCDC, so is not available to serve as a Treatment Class Representative. Further, Bagley tested negative for HCV, and does not require treatment.

SCDC had complied with the notice provisions approved by the court during the preliminary approval hearing and counsel had received no objections. ECF No. 201-1. In addition, counsel gave notice of the settlement to the South Carolina Attorney General's Office and the United States Department of Justice as mandated by 28 U.S.C. § 1715, and received no objections from either of these entities.

Because restrictions on in-person proceedings remain in place, the court determined to go forward with the fairness hearing via videoconference and telephone to ensure the class members are receiving or promptly will receive the medical treatment contemplated by the consent decree. The court especially was concerned that an inmate compromised by chronic HCV could be exposed to COVID-19 at an SCDC facility. The public was notified of the hearing and given the opportunity to participate electronically.

The court's practice is to have the class representative present at a fairness hearing. Unfortunately, Jackson was hospitalized and unable to take part. The court acknowledges his advocacy as Treatment Class Representative and his desire to participate in the fairness hearing. Nevertheless, the court determined that another delay in the fairness hearing would work to the detriment of the parties and the public. Further, Jackson previously approved the consent decree in connection with the preliminary approval hearing.

The court relies on Flinn v. FMC Corp., 528 F.2d 1169, 1173 (4th Cir. 1975):

> [I]t is entirely in order for the trial court to limit its proceedings to whatever is necessary to aid it in reaching an informed, just and reasoned decision. So long as the record before it is adequate to reach an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated and form an educated estimate of the complexity, expense and likely duration of such litigation, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise, it is sufficient.

## II. DISCUSSION

Having reviewed the record, heard arguments of counsel, and considered the applicable law, the court finds and concludes as follows.

A.   Class Certification

Pursuant to Fed. R. Civ. P. 23(a),

> One or more members of a class may sue or be sued as representatives parties on behalf of all members only if
>
>  (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Thus, the class must comply with the four prerequisites established in Rule 23(a): (1) numerosity of parties; (2) commonality of factual and legal issues; (3) typicality of claims and defenses of class representatives; and (4) adequacy of representation. Gunnells v. Healthplan Svcs., Inc., 348 F.3d 417, 423 (4th Cir. 2003) (citing Fed R. Civ. P 23(a)).

Plaintiffs have demonstrated the members of the putative class likely number in the thousands, such that joinder of all members of the class is impracticable. There are common questions of law and fact regarding whether SCDC has violated the class members' right to be free from cruel and unusual punishment, and whether injunctive relief to properly screen, evaluate, monitor, and prioritize treatment for class members is consistent with the medical standard of care. Jackson's claims are typical of the members of the class because he allegedly was injured by the same SCDC policies and practices affecting the class members, and his claims are based on the same

legal theories and factual questions relating to the appropriate standard of care. The court finds that Jackson will fairly and adequately protect the interests of the Treatment Class. The court also notes that the Treatment Class is represented by a number of the same competent and skilled counsel appointed as Class Counsel for the Testing Class.

Plaintiffs contend that class certification is appropriate under Fed. R. Civ. P. 23(b)(2), which provides:

> A class action may be maintained if Rule 23(a) is satisfied and if:
>
> . . . .
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]

As the court noted in its order approving the settlement agreement for the Testing Class, a class action properly is certified under Rule 23(b)(2) when a single injunction or declaratory judgment would provide relief to each member of the class. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 360 (2011). In point of fact, civil rights cases against parties charged with unlawful, class-based discrimination are prime examples of class actions properly brought under Rule 23(b)(2). Amchem Prod. v. Windsor, 521 U.S. 591, 614 (1997).

In this case, Stirling maintains SCDC's HCV policies are not violative of the constitution. However, he does not dispute that revisions to SCDC's policies are appropriate and will benefit the Treatment Class. The Treatment Class provides for a single resolution that will provide relief to all members of the class in a uniform manner, and does so without prejudice to any individual damages claims that might be asserted by class members in separate litigation. The court finds that the requirements of Rule 23(a) and (b)(2) have been met.

B.      <u>Class Representative and Class Counsel Appointment</u>

The court grants final certification of Jackson as Treatment Class Representative and final certification of Guttman, Buschner & Brooks PLLC and Griffin Davis LLC as Class Counsel pursuant to Fed. R. Civ. P. 23(g).

C.      <u>Notice</u>

Under Fed. R. Civ. P. 23(c)(2)(A), the court may direct appropriate notice to the class. The court is informed that SCDC posted the approved notice (ECF No. 183-1) throughout every SCDC housing unit in all institutions on or before January 31, 2020, and that the proposed consent decree (ECF No. 178-2) was distributed to all SCDC agents, servants, representatives, and employees who will be involved with implementing the consent decree. The notice provided directions regarding how to lodge an objection to the consent decree and instructions as to how to access the full body of the consent decree. Counsel inform the court they received inquiries regarding treatment, but no objections to the terms of the consent decree. The court concludes that the notice provided in this case meets the requirements of Rule 23(c)(2)(A) and satisfies any due process considerations.

D.      <u>Consent Decrees Relating to Prison Conditions</u>

The court may not approve a consent decree relating to prison conditions unless the decree is narrowly drawn, extends no further than necessary to correct the violation of the federal right, and is the least intrusive means necessary to correct the violation of the federal right. <u>See</u> 18 U.S.C. § 3626. In this case, Plaintiffs assert violation of their rights under the Eighth Amendment. To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need

requires proof that the plaintiff was suffering from a serious medical need, and that the prison staff were aware of the need for medical attention but failed to provide it. Farmer v. Brennan, 511 U.S. 825, 834-7 (1994). Plaintiffs contend there is evidence in the record to support a finding that SCDC has been deliberately indifferent to the serious medical condition of chronic HCV.

Upon review of the terms of the consent decree and taking into consideration arguments of counsel, the court concludes that the consent decree is narrowly drawn, extends no further than necessary to correct the alleged violation of Plaintiffs' rights under the Eighth Amendment, and is the least intrusive means necessary to correct the alleged constitutional deprivation.

E.   Approval of Consent Decree

Under Fed. R. Civ. P. 23(e)(2),

If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

When the court reviews a proposed class-action settlement, it acts as a fiduciary for the class. In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig., 952 F.3d 471, 483 (4th Cir. 2020). The Court of Appeals for the Fourth Circuit has identified four factors for determining a settlement's fairness:

    (1)    the posture of the case at the time settlement was proposed;

    (2)    the extent of discovery that had been conducted;

    (3)    the circumstances surrounding the negotiations; and

    (4)    the experience of counsel in the area of [the] class litigation.

Id. at 484 (citing In re Jiffy Lube Sec. Litig., 927 F.2d 155, 159 (4th Cir. 1991)).

The Fourth Circuit also as specified the following factors for assessing a settlement's adequacy:

    (1)    the relative strength of the plaintiffs' case on the merits;

    (2)    the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial;

    (3)    the anticipated duration and expense of additional litigation;

    (4)    the solvency of the defendant[] and the likelihood of recovery on a litigated judgment; and

    (5)    the degree of opposition to the settlement.

Id. (citing Jiffy Lube, 927 F.2d at 159).

The court finds that the parties have engaged in extensive discovery, including the retention of expert witness and collection of other evidence regarding the existence of HCV in prisons, the dangers of leaving HCV untreated, and the availability of reasonable medical remedies. The court discerns no evidence of bad faith or collusion. To the contrary, the parties have engaged in robust settlement negotiations with the shared understanding the implementation of treatment protocols for HCV is in the best interest not only of persons in SCDC custody, but in the public interest. Moreover, as the court previously found with respect to the Testing Claims, counsel are well-regarded and experienced in the area of class litigation.

The court finds Plaintiffs likely would prevail on the merits were the case to proceed to trial, although Defendants raised a number of potentially viable defenses in their answer to the third amended complaint. It appears additional litigation, in terms of trial proceedings, would be costly and protracted, given the expert testimony and complex medical issues that would need to be addressed and presented to a jury, as well as complications arising from transporting Class Representative Jackson to the proceedings. The South Carolina Legislature has provided SCDC $10 million for the 2019-2020 fiscal year for the purpose of HCV testing and treatment, and Defendants expressed a good faith belief that the additional funding will be approved on a recurring basis. ECF No. 178-2, ¶ 35. Finally, as previously noted, counsel received no objections to the proposed consent decree. The court finds that settlement of the Treatment Claims, on the terms and conditions set forth in the consent decree, is in all respects fundamentally fair, reasonable, adequate, and in the best interests of the class members.

F.     Settlement Terms

The Consent Decree is granted final approval and shall be consummated in accordance with the terms and provisions thereof, except as may be amended by any order issued by this court. The Parties are hereby directed to perform the terms of the Consent Decree. All class members who were provided notice of the Consent Decree are bound by its terms.

G.     Attorney Fees

Plaintiff's counsel have not sought fees at this time. The parties informed the court at the fairness hearing that they wished to negotiate a reasonable attorney fee and would apply to Magistrate Judge Baker for guidance if needed.

H.        <u>Future Actions Prohibited</u>

The court hereby permanently enjoins and restrains all class members from commencing or prosecuting any action, suit, claim, or demand against Defendants for declaratory or injunctive relief based on the Treatment Claims. Neither the settlement agreement nor the consent decree affects the right of an individual to pursue a claim for monetary relief.

I.        <u>No Admission of Liability</u>

This order is not, and will not, be construed as an admission by Defendants of any liability or wrongdoing in this or in any other proceeding.

J.        <u>Continuing Jurisdiction over Settlement</u>

The parties have informed the court that they intend the partial settlement agreement regarding the Testing Class be incorporated into the consent decree regarding the Treatment Class. As such, the court hereby retains continuing and exclusive jurisdiction over the parties and all matters relating to the within action, the settlement agreement, and the consent decree, including the administration, interpretation, construction, effectuation, enforcement, and consummation of the settlement, the decree, the court's opinion and order filed August 5, 2019, the within opinion and order, and attorneys' fees.

### III. <u>CONCLUSION</u>

The joint motion for approval and entry of consent decree (ECF No. 201) is **granted**. The consent decree (along with the settlement agreement incorporated therein) is **approved**. The consent decree is incorporated herein and **entered** as part of this Order and Opinion. The court retains jurisdiction to enforce the consent decree, pursuant to its terms, until the terms have been satisfied

or until, with the court's concurrence, the parties to the consent decree jointly inform the court its oversight is no longer necessary, whichever comes first.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
Senior United States District Judge

Columbia, South Carolina

June 8, 2020