# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# FLORENCE DIVISION

| | |
|---|---|
| **RUSSELL GEISSLER**, **BERNARD BAGLEY, AND WILLIE JAMES JACKSON**, *individually and on behalf of others similarly situated*, <br><br> Plaintiffs, <br><br> vs. <br><br> **BRYAN P. STIRLING**, Director of the South Carolina Department of Corrections (SCDC), *in his official capacity*; and **JOHN B. MCREE, M.D.**, Division Director of Health and Professional Services for SCDC, *in his individual capacity*, <br><br> Defendants. | Case No.: 4:17-cv-01746-MBS <br><br><br><br> **PROPOSED PARTIAL SETTLEMENT AGREEMENT** <br><br> **(Testing for Chronic Hepatitis C)** |

## CONTENTS

PARTIES AND DEFINITIONS ................................................................................................... 2
GENERAL PRINCIPLES ............................................................................................................ 3
SPECIFIC TERMS OF SETTLEMENT ...................................................................................... 8
   A.   Implement the Centers for Disease Control's (CDC's) Recommended Two-Step Process for Diagnosing Chronic HCV ................................................................................ 8
   B.   Test Plaintiffs Geissler and Bagley for Chronic HCV According to CDC Guidelines.... 8
   C.   Expeditiously Determine the Scope of Chronic HCV within SCDC .............................. 9
   D.   Provide the Governor and the Legislature with Scope and Cost Estimates ................... 10
   E.   Complete Two-Step Testing for Inmates who have Already Tested positive for HCV Antibodies ................................................................................................................... 11
   F.   Provide Opt-Out Testing for New Inmates .................................................................. 11
   G.   Provide Opt-Out Testing for All Inmates .................................................................... 11
   H.   Establish and Maintain Accurate Electronic Database of Inmates with Chronic HCV . 12
   I.   Report Progress Every Four Months ........................................................................... 12
SIGNATURES ........................................................................................................................... 13

## PARTIES AND DEFINITIONS

1. The parties to this Proposed Partial Settlement Agreement (the "Testing Agreement") are Plaintiffs Russell Geissler and Bernard Bagley, individually and on behalf of others similarly situated; and Defendant Bryan P. Stirling, in his official capacity as Director of the South Carolina Department of Corrections ("SCDC").  Plaintiff Willie James Jackson and Defendant John B. McRee, M.D. are not Parties to this Testing Agreement.

2. "HCV" refers to Hepatitis C.

3. "DAA" refers to direct-acting antiviral medications.

4. "Plaintiffs" refers to all current and future inmates in SCDC custody, with the exception of inmates who have already been diagnosed with chronic HCV.

5. "Governor" refers to the current Governor of South Carolina, and, if applicable, any Governor-elect.

6. "Legislature" refers to the individual members of the South Carolina House and Senate who hold office on January 8, 2019.

7. "Opt-Out Testing" refers to the process of informing a patient of the indications of HCV and the plan for testing and performing the tests, unless the patient declines them.  It is an informed refusal rather than informed consent.

8. "Preliminary Approval Date" refers to December 20, 2018, the date on which the Court entered an order preliminarily approving the Stipulation of Settlement and directing that notice of pendency and settlement be provided to Plaintiffs (Dkt. 142).

9. "Effective Date" shall be the date upon which the Testing Agreement is approved by the Court or a motion to approve the Testing Agreement is granted, whichever occurs first, as recorded on the Court's docket.

## GENERAL PRINCIPLES

10. For any plans discussed in this Testing Agreement, the parties shall make a reasonable effort to resolve any issue in controversy through negotiation. If the parties are unable to resolve any issues through negotiation, they will submit their dispute to Magistrate Judge Mary Gordon Baker for mediation. If the parties are unable to resolve the controversy through this process the plan shall be submitted to the Court for a hearing on the issues.

11. The Court shall retain full jurisdiction in this case to enforce the terms of the Testing Agreement and to ensure that all plans incorporated herein are fully complied with and implemented.

12. Counsel for Plaintiffs Geissler and Bagley shall have access to and may receive copies of documents that effectuate the implementation of the Testing Agreement in a manner consistent with HIPAA's protections regarding Protected Health Information.

13. Defendant Stirling, in his official capacity as Director of SCDC, shall immediately explain the terms of the Testing Agreement and distribute it to all SCDC agents, servants, representatives, and employees who will be involved with effectuating the Testing Agreement to ensure their understanding of the need for compliance therewith. Defendant Stirling shall require strict compliance with the Testing Agreement by said persons.

14. Notice of this Testing Agreement shall be provided as follows:

   a. The Testing Agreement shall be posted in each and every housing unit of every SCDC Institution;

   b. The Testing Agreement shall be available on the SCDC website and in prison libraries;

   c. The Testing Agreement shall be posted on the website www.SCHepC.com;

   d. The Testing Agreement shall be distributed to the Circuit Public Defender for each judicial circuit in South Carolina;

    e.    The Testing Agreement shall be distributed to the South Carolina Bar;

    f.    Each Inmate—upon being processed—shall be advised of the existence of the Testing Agreement and where it is available to review and told specifically that: "by Court Order you have a right to be tested for Hepatitis C pursuant to the terms of the Testing Agreement. This means that you have the right to be tested for the Hepatitis C anti-body. If that test is positive, you have the right to a second test called a sensitive HCV-RNA test to confirm the presence of the Hepatitis C virus."

15.    Plaintiffs who are currently incarcerated in SCDC institutions shall have the right to individually submit written objections to the Testing Agreement to the Court within 45 days of the Preliminary Approval Date of the Testing Agreement or under such alternative terms and conditions as may be required by the Court.

16.    The Testing Agreement shall be deemed to serve as settlement of claims for declaratory and injunctive relief concerning SCDC's HCV testing policies and practices (contained in Count I of the Third Amended Class Action Complaint). The Testing Agreement does not address the claims for declaratory and injunctive relief concerning SCDC's HCV treatment policies and practices (Counts I–III of the Third Amended Class Action Complaint). The Testing Agreement does not affect the right of an individual to pursue individual claims for monetary relief. If a Plaintiff seeks declaratory or injunctive relief in a separate action, he or she may do so as long as such lawsuit does not pertain to the HCV testing issues addressed in the Testing Agreement.

17.    Strict compliance with the Testing Agreement shall be a complete defense to any equitable claim based upon the HCV testing issues addressed in the Testing Agreement. However, all parties acknowledge the Testing Agreement shall not resolve any issues involving the treatment of chronic HCV. Nonetheless, the parties are committed to reaching a complete resolution that will include treatment and, hence, the parties reserve the right to seek to have the

Testing Agreement incorporated into a final consent order that resolves all matters before the Court in this case.

18. Any timetable proposed in the Testing Agreement may be subject to extension by written agreement of the Parties or by the Court upon a showing of reasonable grounds for such extension by Defendant Stirling, so long as the need for delay is not caused by the neglect or dereliction or inaction of Defendant Stirling, or any person who replaces Defendant Stirling as Director of SCDC. Plaintiffs reserve the right to object in good faith and oppose any requests for extensions of time.

19. In the event of an emergency that Defendant Stirling in good faith believes to require the temporary waiver of the provisions of the Testing Agreement, Defendant Stirling shall notify the Court and Plaintiffs' counsel of the emergency and need for waiver within 24 hours of knowledge that said emergency will impact SCDC's ability to comply with the requirements of the Testing Agreement. Such notice shall identify the emergency, the specific provisions of the Testing Agreement that Defendant Stirling believes must be temporarily waived, the reasons necessitating the waiver, the exhaustion of all alternatives to waiver, and the anticipated duration of the waiver. If Plaintiffs' counsel have a good faith disagreement with the proposed waiver or its duration, the controversy shall be submitted to the Court for hearing and determination.

20. The parties agree that the Testing Agreement establishes minimum standards and is not intended to prevent Defendant Bryan Stirling from implementing any programs or processes that benefit Plaintiffs. In addition, the Testing Agreement is not intended to and shall not have the effect of decreasing or abrogating the rights, programs, and procedures that existed before the Testing Agreement pursuant to SCDC's policies, procedures, or other lawsuit

settlements. Further, the Testing Agreement does not abrogate any substantive rights or procedural protections Plaintiffs may now have or hereafter acquire under state or federal statutes. The parties agree that the Testing Agreement represents the entire intent of the parties and shall not be modified except as expressly permitted within the Testing Agreement. Defendant Stirling shall carry out every provision of the Testing Agreement in good faith.

21. All parties agree that the chronic HCV testing issue in this action is appropriate for certification as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. The parties have stipulated to the certification of a class action, as it pertains to testing for chronic HCV, pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, composed of all current and future inmates in SCDC custody, with the exception of inmates who have already been diagnosed with chronic HCV.

22. The parties expressly agree that the Testing Agreement is not an admission of constitutional violations. The parties have entered into the Testing Agreement solely as a means to reasonably resolve part of the controversy and to avoid the costs, time and risks which litigation would involve for both parties. The Testing Agreement should not be construed in any manner as establishing constitutional standards, minimums, maximums, or thresholds of constitutional harm to Plaintiffs. Neither the Testing Agreement nor the Judgment that may follow from the Testing Agreement, nor anything contained herein or therein, shall constitute or be construed as evidence or as an admission or adjudication with respect to any alleged fact or conclusion of law with respect to any matter alleged in or arising out of the Third Amended Complaint, including but not limited to any alleged constitutional violations asserted by Plaintiffs, or of any wrongdoing or misconduct on the part of Defendant Stirling.

23. The Testing Agreement is enforceable by Plaintiffs and the Court.

24. Violation of the Testing Agreement shall not serve as the basis of liability of Defendant Stirling to any individual Plaintiff, absent proof of proximate cause and damages.

25. The Testing Agreement may be modified in the future by mutual and joint petition of the parties or their successors, or upon petition of any party. Said petition shall be made to the Court and approved by the Court, after notice and hearing, by an Order amending the Testing Agreement. Any disputed petition for modification shall be reviewed by the Court under the applicable law pertaining to the modification of settlement agreements approved by the Court.

26. No remedial action, including sanctions, shall be taken against Defendant Stirling or any of his agents, representatives, or employees in their individual capacities for any alleged failure to comply with the Testing Agreement unless the Court specifically finds, following a hearing, that said individual acted in bad faith. For the purposes of this paragraph, an individual shall not be deemed to have acted in bad faith if budgetary constraints are the reason for his or her failure to satisfy the terms of the Testing Agreement, so long as he or she has made good-faith efforts to obtain the necessary funding from all potential sources. For the purposes of this paragraph, good-faith efforts must include informing the Governor and the Legislature of the anticipated need and the anticipated shortfall in writing within 10 days of identifying the budgetary constraints.

27. Because the Testing Agreement is only a partial resolution of the pending controversy and additional litigation is ongoing, Plaintiffs' counsel reserve the right to seek at a later date all costs and reasonable attorneys' fees incurred to date in connection with the Testing Agreement that are available by law.

**SPECIFIC TERMS OF SETTLEMENT**

**A.     Implement the Centers for Disease Control's (CDC's) Recommended Two-Step Process for Diagnosing Chronic HCV**

28.     Since May 2013, the CDC has specified that testing for chronic HCV should be done in a two-step process to confirm chronic HCV.  In the first step, it is determined whether the HCV antibody is present.  If the HCV antibody is present, the second step is to determine whether the HCV infection is current by conducting nucleic acid testing (NAT).  (See https://www.hcvguidelines.org).

29.     Accurate testing will help SCDC (a) correctly identify persons with chronic HCV; (b) notify inmates with chronic HCV of their status and enable SCDC and the inmates themselves to take measures to limit HCV disease progression; and (c) inform inmates who do not have HCV of their status.

30.     Defendant Stirling agrees to implement this two-step testing process immediately upon the filing of the Testing Agreement to be carried out in the manner set forth in more detail herein.  As of the Preliminary Approval Date, SCDC will use the two-step process to diagnose chronic HCV.  SCDC will administer LabCorp test number 144050 identified as Hepatitis C Virus (HCV) Antibody With Reflex To Quantitative Real-Time PCR.

31.     Defendant Stirling also agrees to incorporate this two-step process into all SCDC policies, procedures, and protocols involving the initial diagnosis of chronic HCV for as long as it remains the generally accepted standard of care.

**B.     Test Plaintiffs Geissler and Bagley for Chronic HCV According to CDC Guidelines**

32.     Within 21 days of the Preliminary Approval Date, Defendant Stirling agrees to test Plaintiffs Geissler and Bagley for chronic HCV according to CDC guidelines.  Defendant

Stirling shall provide these plaintiffs and their counsel with the results of these tests as soon as they are known.

**C.        Expeditiously Determine the Scope of Chronic HCV within SCDC**

33.     At present, there is no accurate count or reasoned estimate of the size of the population of SCDC inmates that have chronic HCV.  The size of that population will determine, in part, the manner in which the treatment component of this action progresses.  To quickly and accurately estimate the scope of chronic HCV within SCDC, Defendant Stirling agrees to provide Opt-Out Testing to a randomly selected sample of 390 inmates (130 inmates at a level 3 facility (Perry Correctional Institution); 130 inmates at a level 2 facility (Turbeville Correctional Institution); 65 inmates from a level 1 facility (Manning Correctional Institution); and 65 inmates at a female facility (Camille Griffin Graham Correctional Institution)) within 30 days of the Preliminary Approval Date.  Decisions on which housing units at these institutions the inmates are selected from will be based on adequate security considerations. In case of unforeseen circumstances, such as weather, extended lockdown, staffing shortages, or any other reason for good cause, Defendant Stirling shall notify the Court and Plaintiffs' counsel of the unforeseen circumstances and an extension not to exceed 30 days shall be given to accomplish the testing.  It is acknowledged by all parties to this Decree that the population from which the sample group is selected may include individuals who have been diagnosed with chronic HCV, as well as individuals who have tested positive for the HCV antibody.

34.     Defendant Stirling agrees to provide Plaintiffs' counsel and the Court with the following information regarding the randomly selected inmates tested for chronic HCV (in a manner consistent with HIPAA's protections regarding Protected Health Information) within 5 days of finishing the random Opt-Out Testing of the 390 inmates:

- Total number of inmates offered Opt-Out Testing

- Total number of inmates that opted out

- Total number of inmates administered HCV antibody tests

- Total number of HCV-antibody positive inmates

- Total number of inmates with chronic HCV

35. Defendant Stirling agrees to provide Plaintiffs' counsel with copies of the test results and opt-out forms so that they can be confirmed within 5 days of finishing the random Opt-Out Testing of the 390 inmates. For purposes of this Consent Decree, the random Opt-Out Testing is not finished until such time as Defendant Stirling is in possession of all test results from Lab Corp. and all opt-out forms.

36. This section shall not be subject to mediation.

**D.     Provide the Governor and the Legislature with Scope and Cost Estimates**

37. Within 45 days of the Preliminary Approval Date, Defendant Stirling agrees to provide to the Governor a memorandum containing, at a minimum, (1) the number of SCDC inmates who have been randomly tested for chronic HCV, (2) the estimated number of SCDC inmates with chronic HCV based on the random sample that was tested, and (3) the estimated cost of DAA medications for those inmates. In the event that Defendant Stirling has not completed the testing of the randomly selected inmates within 45 days of the Preliminary Approval Date, Defendant Stirling will update the memorandum when testing is completed with any changes to (1) the estimated number of SCDC inmates with chronic HCV based on the random sample that was tested, and (2) the estimated cost of DAA medications for those inmates.

38. At Defendant Stirling's discretion, a revision to SCDC's Fiscal Year 2019–2020 budget plan may be submitted to the Governor.

39.     On or before January 10, 2019, Defendant Stirling agrees to provide to the Legislature a memorandum containing, at a minimum, (1) the estimated number of SCDC inmates with chronic HCV based on the random sample that was tested, and (2) the estimated cost of DAA medications for those inmates.

### E.     Complete Two-Step Testing for Inmates who have Already Tested positive for HCV Antibodies

40.     As of April 12, 2018, 616 SCDC inmates tested positive for the HCV antibody. Most of those inmates have not received nucleic acid testing to confirm that they actually have chronic HCV.

41.     Defendant Stirling agrees to complete two-step testing for all of these inmates who have not received nucleic acid testing within 8 months of the Preliminary Approval Date, unless an earlier timeline is established elsewhere in the Testing Agreement.

### F.     Provide Opt-Out Testing for New Inmates

42.     Defendant Stirling agrees to incorporate Opt-Out Testing for new inmate intake in SCDC policies, procedures, protocols, and practices within 4 months of the Preliminary Approval Date.

43.     Within 5 months of the Preliminary Approval Date, 100% of new SCDC inmates who do not already have a confirmed HCV diagnosis will be offered Opt-Out Testing.

### G.     Provide Opt-Out Testing for All Inmates

44.     Within 6 months of the Preliminary Approval Date, Defendant Stirling agrees to develop a plan to provide Opt-Out Testing to all SCDC inmates.

45.     Defendant Stirling agrees to provide Opt-Out Testing to 100% of all SCDC inmates within 18 months of the Preliminary Approval Date.

**H.     Establish and Maintain Accurate Electronic Database of Inmates with Chronic HCV**

46.     Within 3 months of the Preliminary Approval Date, Defendant Stirling agrees to establish an electronic system to readily identify SCDC inmates who have been diagnosed with chronic HCV.

47.     At a minimum, this system shall include the following information: Inmate number; date of HCV antibody test; date of nucleic acid test; Highest APRI score to date; and Treatment Status.

**I.     Report Progress Every Four Months**

48.     Unless a different reporting date is established elsewhere in the Testing Agreement, Defendant Stirling will provide updates every four months from the Effective Date regarding progress in the following:

   a. Number of inmates who have been offered Opt-Out Testing to date

   b. Number of inmates who have opted out of HCV testing to date

   c. Number of inmates administered HCV antibody tests through the opt-out program to date

   d. Number of inmates HCV-antibody positive who have not yet confirmed chronic HCV with nucleic acid test, separating into two groups (the Opt-Out Group, and the inmates who had already known that they were HCV antibody positive)

   e. Number of inmates to date who have a confirmed chronic HCV diagnosis.

49.     With respect to Sections A and E, Defendant Stirling shall provide Judge Mary Gordon Baker and Plaintiffs' counsel with supporting documentation, where appropriate, indicating for each subsection whether Defendant is in compliance.

50.     Magistrate Judge Mary Gordon Baker will receive and review this documentation and have the authority to independently follow up with Defendant Stirling on any issues related to the Testing Agreement.

## SIGNATURES

The following parties certify that they have read the foregoing Testing Agreement and that it is an accurate record of their agreement in this action:

| **YARBOROUGH APPLEGATE LLC** | **AIKEN, BRIDGES, ELLIOTT, TYLER & SALEEBY, P.A.** |
|---|---|
| s/ Christopher J. Bryant<br>David B. Yarborough Jr., Federal ID 7336<br>david@yarboroughapplegate.com<br>Christopher J. Bryant, Federal ID 12538<br>chris@yarboroughapplegate.com<br>291 East Bay Street, Floor 2<br>Charleston, SC 29401<br>(843) 972-0150 office<br>(843) 277-6691 fax | s/Samuel F. Arthur, III<br>Samuel F. Arthur III, Federal ID 7070<br>sfa@aikenbridges.com<br>J. Rufus Bratton III, Federal ID 10332<br>PO Drawer 1931<br>Florence, SC 29503<br>Telephone: 843.669.8787<br>Fax: 843.664.0097 |
| **GUTTMAN, BUSCHNER & BROOKS PLLC** | *ATTORNEYS FOR DEFENDANT* |
| s/ Reuben A. Guttman<br>Reuben A. Guttman*<br>rguttman@gbblegal.com<br>Justin S. Brooks*<br>jbrooks@gbblegal.com<br>Paul J. Zwier II*<br>pzweir@gbblegal.com<br>Elizabeth Shofner*<br>lshofner@gbblegal.com<br>2000 P Street, NW<br>Suite 300<br>Washington, D.C. 20036<br>(202) 800-3001 office | |

*ATTORNEYS FOR PLAINTIFFS*

November 28, 2018

\*        admitted *pro hac vice*

13