## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## FLORENCE DIVISION

| | |
|---|---|
| **RUSSELL GEISSLER**, **BERNARD BAGLEY, AND WILLIE JAMES JACKSON**, *individually and on behalf of others similarly situated*,<br><br>        *Plaintiff,*<br><br>*vs.*<br><br>**BRYAN P. STIRLING**, Director of the South Carolina Department of Corrections (SCDC), *in his official capacity*; and **JOHN B. MCREE, M.D.**, Division Director of Health and Professional Services for SCDC, *in his individual capacity*,<br><br>        *Defendants.* | Case No.: 4:17-cv-01746-MBS<br><br>**JOINT MOTION FOR APPROVAL OF MEDIATED SETTLEMENT AGREEMENT RESOLVING THE ISSUE OF 42 U.S.C. § 1988 FEES AND COSTS** |

Pursuant to Fed. R. Civ. P. 23(h) & 54(d)(2) and L.R. 54.02(A), Plaintiff Willie James Jackson (the "Treatment Class Representative") and Defendant Bryan Stirling in his official capacity as director of the South Carolina Department of Corrections ("SCDC") now move jointly for approval of the Mediated Settlement Agreement Resolving the Issue of 42 U.S.C. § 1988 Fees and Costs (the "Mediated Fees," attached as Exhibit A).

On June 8, 2020, the Court gave final approval to the Consent Decree (ECF Nos. 204, 204-2), which resolved claims regarding the South Carolina Department of Corrections' policies and practices related to the testing and treatment of chronic Hepatitis C ("HCV"). Specifically, the Consent Decree resolved all claims for injunctive and declaratory relief for the class of all current

and future inmates in SCDC custody who have been or will be diagnosed with chronic HCV (the "Treatment Class").[1]

The Consent Decree did not resolve the issue of attorneys' fees and costs to which Plaintiffs, as "prevailing parties," are entitled under 42 U.S.C. § 1988. Following the Court's approval of the Consent Decree, the Parties entered discussions about the fees and sought mediation from Magistrate Judge Mary Gordon Baker, the Monitor appointed by the Consent Decree. During the mediation, the Parties agreed that SCDC would pay Plaintiffs $450,000 in attorneys' fees plus costs. This agreement was reduced to the Mediated Fees agreement and was executed by the Parties and Judge Baker. Ex. A.

The Parties now respectfully ask the Court to give its approval to the Mediated Fees.

## BACKGROUND

On June 30, 2017, Plaintiff Russell Geissler filed a *pro se* complaint seeking, among other things, (1) treatment for his chronic HCV and (2) treatment for all SCDC inmates with chronic HCV (the "Treatment Claims"). (ECF No. 1 at 6). The Court appointed counsel[2] for Plaintiff Geissler on January 9, 2018, in light of "the state of the law regarding the issue." (ECF No. 72 at 2). The Parties were unable to negotiate a settlement for Plaintiff Geissler's individual claims. Appointed counsel then associated additional counsel[3] and filed the Second Amended Class

---

[1] The Consent Decree also incorporates, by reference, the settlement agreement the Parties reached earlier regarding HCV testing issues (the "Testing Claims"), which the Court approved on August 5, 2019. (ECF No. 168).

[2] The Court appointed Christopher Bryant of Yarborough Applegate to represent Mr. Geissler.

[3] Attorney Bryant enlisted co-counsel Guttman, Buschner & Brooks, PLLC ("GBB") and the Richard A. Harpootlian, Law Firm ("Harpootlian") in early March 2018. Harpootlian subsequently withdrew from the case after Mr. Harpootlian was elected to the state senate.

Action Complaint seeking comprehensive testing of all SCDC inmates for chronic HCV and treatment for those individuals diagnosed with chronic HCV.  (ECF No. 88).

At the time the Second Amended Complaint was filed, all counsel were aware that SCDC did not have a comprehensive testing program that screened inmates for chronic HCV.  The Parties subsequently engaged in extensive written and oral discovery.  Through this process, SCDC acknowledged that the two-step process had not been completed in all cases where an inmate had been tested for HCV antibodies.

On August 21, 2018, Plaintiffs' counsel filed the Third Amended Class Action Complaint, in part, to reflect the new testing information.  (ECF No. 108, at ¶ 1).  Plaintiffs added two named plaintiffs to the action. Plaintiff Willie James Jackson, an inmate serving a life sentence in SCDC, was added because he was diagnosed with chronic HCV in 2008 while in SCDC custody.  In the ten years between that diagnosis and joining this lawsuit, Jackson did not receive treatment under the old interferon protocol or the new DAA protocol.

Plaintiff Bernard Bagley was added to the action because SCDC had refused his requests to have testing for chronic HCV, despite the fact that he was (a) born between 1945 and 1965, and (b) received a blood transfusion before 1992.  The CDC recommends testing for both groups of individuals.    CDC, *Testing Recommendations for Hepatitis C Virus Infection*, https://www.cdc.gov/hepatitis/hcv/guidelinesc.htm (last visited Dec. 3, 2018).

Plaintiffs subsequently deposed several individuals, including both of the named Defendants, Brian Stirling and John McRee, M.D., Dr. Samuel Soltis, a former Medical Director of SCDC, Director of Pharmacy Wendy Knox, Infection Control Manager Melanie Davis, and Specialty Clinic Supervisor Linda Wooten.

In November 2018, the Parties reached an agreement for settlement of Plaintiffs' Testing Claims, requiring opt-out testing for all SCDC inmates. (ECF No. 166-1). Plaintiff Bagley is the representative for the Testing Class. (ECF No. 125). In early 2019, the South Carolina House Ways and Means Committee considered and approved a budget that would provide $10 million for SCDC's Hepatitis C treatment program. Following a hearing, the Court granted final approval of the Partial Settlement Agreement on August 5, 2019 (ECF No. 168).

In the period between the agreement and approval, SCDC began testing its inmate population. As of April 20, 2020, more than 14,000 inmates had been tested for HCV antibodies. Of the tested inmates, 1,327 currently incarcerated individuals have confirmed chronic HCV diagnoses. That number represents 7.46 % of the current inmate population or 11.48 % of the current inmate population that was tested.

The Partial Settlement Agreement addressed only the Testing Claims, and the Parties continued to discuss terms of settlement that addressed the remaining Treatment Claims. On October 31, 2019, following extensive discussions and an in-person mediation with Judge Baker, the Treatment Class Representative[4] and Defendant Stirling agreed to the terms contained in the Consent Decree. (ECF No. 178-2). On January 23, 2020, the Court granted preliminary approval of the Consent Decree. (ECF No. 183). The Court gave its final approval of the Consent Decree on June 8, 2020, following a telephonic hearing. (ECF No. 204). Inmates have already been or currently are being treated for HCV.

---

[4] Plaintiff Jackson. Plaintiff Geissler is no longer incarcerated in an SCDC facility and, therefore, is no longer available to serve as a Treatment Class Representative. Plaintiff Bagley tested negative for HCV and, accordingly, does not need treatment for chronic HCV.

4

The Parties deferred the issue of Plaintiffs' entitlement to attorneys' fees and expenses under 42 U.S.C. § 1988 during the negotiation and execution of the Partial Settlement Agreement for testing (ECF No. 204-1) and Consent Decree for treatment (ECF No. 204-2) in order to preclude any possible impact on the settlements and any conflicts of interest. Specifically the Consent Decree provides

> Defendants acknowledge that Plaintiffs intend to seek reasonable attorneys' fees and costs in an amount, manner, and time period approved by the Court pursuant to Federal Rule of Civil Procedure 23(h). Class Counsel intends to file a motion pursuant to Federal Rule of Civil Procedure 54(d)(2) to request the Court's approval of such fees and costs. With respect to Class Counsel's continuing obligation to monitor this Consent Decree, Plaintiffs reserve the right to seek further attorneys' fees and costs as warranted. Notwithstanding the above, the Parties shall endeavor to resolve matters of fees and costs absent Court involvement and shall utilize the Monitor to do so.

(ECF No. 204-2, at 16).

> Similarly, the Parties' Motion for Final Approval explained that

> Plaintiffs intend to submit their petition for fees and costs to mediation with Magistrate Judge Mary Gordon Baker after the Court's approval of the Consent Decree. To the extent the parties are unable to reach a negotiated agreement on fees and costs, Plaintiffs' will file a fee petition with this Court. Because there is no common fund, fees and costs do not impact the obligations of Defendants under the terms of the Consent Decree.

(ECF No. 201, at 10).

Following the approval of the Consent Decree, the Parties entered into discussions about attorneys' fees. Plaintiffs provided Defendants with invoices setting forth a lodestar[5] amount of

---

[5] The lodestar amount is calculated by multiplying "the number of hours reasonably expended on litigation by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

5

$1,043,118 based on 1620 hours[6] and counsel's regular hourly rates and explained that the lodestar figure was "without the application of any success multiplier." Defendants countered that they believed the Prison Litigation Reform Act, 42 U.S.C. § 1997e(d)(3) ("PLRA"), capped the hourly rate that could be recovered in prisoner cases and offered $300,000 plus costs. The Parties then submitted the issue of fees and costs to a telephonic mediation with Judge Baker on July 28, 2020. As a result of the mediation, the Parties agreed to settle for $450,000 in fees plus all costs, or a total of $484,406.67. Ex. A.

## ARGUMENT

### A.   LEGAL STANDARD

Section 1988(b) allows a "prevailing party ... a reasonable attorney's fee as part of the costs" for claims brought under 42 U.S.C. § 1983. A party prevails for purposes of § 1988 if it secures "'actual relief on the merits of [its] claim [that] materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.'" *See Coward v. Robinson*, No. 110CV147LMBMSN, 2017 WL 5195868, at *2 (E.D. Va. Nov. 9, 2017) (quoting *Lefemine v. Wideman*, 568 U.S. 1, 4 (2012)) (alterations in original). The Plaintiffs here prevailed for purposes of § 1988 because a Consent Decree was entered requiring SCDC to test and treat its inmates for chronic HCV, which represents the full injunctive relief Plaintiffs sought.

For cases governed by the PLRA, "[n]o award of attorney's fees . . . shall be based on an hourly rate greater than 150 percent of the hourly rate established under [the Criminal Justice Act

---

[6] This figure does not include hours worked on the case by the Harpootlian and Perkins Coie law firms. In 2019, Christopher Bryant moved his practice from Yarborough Applegate to Perkins Coie in Washington, D.C., while continuing his representation in this case.

("CJA")] for payment for court-appointed counsel." 42 U.S.C. § 1997e(d)(3).[7] The CJA rates as of January 1, 2020 were $152 for non-capital cases and $195 for capital cases. Increased by 150%, those rates set a range of $228 to $292.50. The CJA does not establish a rate for paralegal time, but multiple courts have concluded that paralegals may seek the same maximum rate as attorneys. *See, e.g.*, *Perez v. Cate*, 632 F.3d 553, 554 (9th Cir. 2011); *Coward v. Robinson*, No. 110CV147LMBMSN, 2017 WL 5195868, at *3 (E.D. Va. Nov. 9, 2017); *Duvall v. O'Malley*, No. ELH–94–2541, 2016 WL 3523682, at *14 (D. Md. June 28, 2016); *see also Missouri v. Jenkins*, 491 U.S. 274, 285 (1979) (for purposes of § 1988, the phrase "reasonable attorney's fee" encompasses separately billed paralegal services).

In the Fourth Circuit, moreover, district courts "evaluating 'what constitutes a "reasonable" number of hours and rate' for the work performed, '. . . should be guided by' the twelve factors enumerated in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714 (5th Cir. 1974) and adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc*., 577 F.2d 216 (4th Cir. 1978) [the "*Barber* factors")." *Robinson v. Equifax Info. Services, LLC*, 560 F.3d 235, 243-44 (4th Cir. 2009). The *Barber* factors include:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which

---

[7] The PLRA also caps § 1988 attorneys' fees at 150% of the money judgment recovered. 42 U.S.C. § 1997e(d)(2). That provision does not apply to cases, like this one, that award injunctive relief. *See, e.g.*, *Pearson v. Welborn*, 471 F.3d 732, 742 (7th Cir. 2006) (explaining that § 1997e(d)(2) is "inapplicable if the plaintiff secured non-monetary relief" and collecting cases); *Walker v. Bain*, 257 F.3d 660, 667 n.2 (6th Cir.2001) (stating that "if non-monetary relief is obtained, either with or without money damages, § 1997e(d)(2) would not apply").

the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* (quoting *Barber*, 577 F.2d at 226 n.28).[8]

However, where "the amount of fees is agreed upon, is separate and apart from the class settlement, and has been negotiated after the other terms have been agreed, the attorneys' fee is presumed to be reasonable." *Cole v. Collier*, No. 4:14-CV-1698, 2018 WL 2766028, at *13 (S.D. Tex. June 8, 2018), *appeal dismissed sub nom. Brannum v. Collier*, 745 F. App'x 544 (5th Cir. 2018); *see also DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 292 (W.D. Tex. 2007). The Mediated Fees are therefore presumptively reasonable because they were not agreed upon until after the Plaintiffs' injunctive relief was negotiated and resolved.

### B.    THE MEDIATED FEES ARE REASONABLE

In *Hensley v. Eckerhart* the Supreme Court explained that "[a] request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." 461 U.S. 424, 429-40 (1983).  Heeding that mandate, the Parties agreed to the Mediated Fees through arms' length negotiation and mediation with Judge Baker.  The Mediated Fees reflect both Parties' recognition of the inherent uncertainty and risk involved in submitting the issue of fees to the Court by way of a fee petition.

### 1.    The Uncertainty and Risks Considered

The Parties considered several specific issues that could impact an award made by the Court.  As an initial matter, the Parties recognized that the Mediated Fees stopped the clock before the fee negotiations even began.  Submitting a fee petition to the Court would have resulted in

---

[8] Local Rule 54.02(a) requires any petition for attorneys' fees to comply with the *Barber* factors.

8

increased costs – so-called "fees on fees" – chargeable to Defendants. *See, e.g.*, *Perez v. Westchester County Dept. of Corrections*, 587 F.3d 143, 148, 156 (2d Cir. 2009).

In addition, there was uncertainty as to how the PLRA impacted the fees to which Plaintiffs were entitled.  The amount of fees settled upon, $450,000, comes to an hourly rate of $277.78 applied to 1620 hours.[9]  For PLRA purposes, it is about 22% higher than the regular cap of $228 and about 5% lower than the death penalty cap of $292.50.  Defendants maintained that the regular $228 cap set the maximum Plaintiffs could recover.  Plaintiffs maintained that they would seek to have the death penalty cap applied in light of testimony by SCDC officials that failure to treat HCV was like imposing a "death sentence." (*See* Exhibit B attached, Excerpts of Dec. 11, 2018 Deposition of John McRee, M.D., at 91:13-25; *see also id*. at 84:14-25). *See Carbonell v. Acrish*, 154 F. Supp. 2d 552, 559 n.7 (S.D.N.Y. 2001) (finding argument that death penalty rate applied to § 1988 action questionable, but not deciding the issue).

Plaintiffs also asserted they would seek a "success multiplier," creating considerable uncertainty as to the potential range of an award of fees. *See, e.g.*, *Parsons v. Ryan*, 949 F.3d 443, 466 (9th Cir. 2020) ("The PLRA . . . authorizes multipliers to the base hourly rate above the cap set by 42 U.S.C. § 1997e(d)(1)."); *Cole*, 2018 WL 2766028, at *15 (applying 1.9 multiplier to PLRA lodestar "to ensure the lodestar reflects a reasonable fee in light of the [*Barber*] factors"); *Barnard v. Piedmont Reg'l Jail Auth*., No. CIV.A. 3:07CV566, 2009 WL 3416228, at *2 n.4 (E.D. Va. Oct. 21, 2009) (explaining reasons that could warrant applying a multiplier to the lodestar determined with the PLRA cap); *Skinner v. Uphoff*, 324 F. Supp. 2d 1278, 1287–88 (D. Wyo.

---

[9] As noted *supra*, this is less than the total number of hours expended by Plaintiffs' counsel on the case.

2004) (applying 25% multiplier to PLRA hourly rate); *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554-55 (2010) ("[A]n enhancement [to the lodestar amount] may be appropriate where the method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value."). As the Ninth Circuit reasoned in *Kelly v. Wengler*,

> Attorney's fees awards under § 1988 are determined by first multiplying the relevant hourly rate by the number of hours reasonably spent. Section 1997e(d)(3) provides only that fee awards may not "be based on an hourly rate greater than 150 percent" of the CJA rate. That is, the rate limited by § 1997e(d)(3) is the base rate used to calculate the lodestar figure, which is the PLRA's counterpart to the prevailing market rate used in non-PLRA cases. Only after calculating the lodestar figure using this base rate does a court then determine whether to apply an enhancement to that figure.

822 F.3d 1085, 1101-02 (9th Cir. 2016) (internal citation and quotation marks omitted). The *Kelly* court added that

> Congress knows how to instruct a court not to adjust the lodestar figure. Yet such instruction is conspicuously absent from the PLRA. Congress' silence is strong evidence that the usual practice should be followed. That is, Congress' silence is strong evidence that the PLRA contemplates the continuation of the normal practice under § 1988 of adjusting the lodestar figure by factors not subsumed in that figure.

*Id.* at 1101 (internal citation and quotation marks omitted).  Notably, the attorneys' fees agreed upon by the Parties – $450,000 – represents the application of a 22% multiplier over the regular PLRA base rate. The Parties agree that a 22% multiplier is reasonable in light of the successful results obtained by Plaintiffs' counsel.

### 2.    The Fees are Reasonable Under the *Barber* Factors

A review of the *Barber* factors supports a determination that the Mediated Fees are reasonable:

1. <u>The time and labor expended</u>. Representing thousands of inmates in a case involving medical care has required hundreds of hours of time and labor over the course of three years.

2. <u>The novelty and difficulty of the questions raised</u>. Although other circuits have addressed the issue of testing and treating chronic HCV, representing inmates presents a number of difficult issues, particularly in light of the many restrictions imposed by the PLRA.

3. <u>The skill required to properly perform the legal services rendered</u>. Both class actions and prison and jail conditions litigation are recognized as complex areas of the law in which counsel must have considerable skill in order to competently represent their clients.

4. <u>The attorney's opportunity costs in pressing the instant litigation</u>. Undertaking a massive class action, such as the case at bar, over several years, necessarily imposes significant limitations on the other cases an attorney is able to take on.  The Mediated Fees only partially compensate for those lost opportunities.

5. <u>The customary fee for like work</u>. The PLRA caps hourly rates at a level below the market rates for experienced counsel.  As noted above, a lodestar calculation based on Plaintiffs' counsel's ordinary rates exceeded $1 million.

6. <u>The attorney's expectations at the outset of the litigation</u>. The fee in this case was entirely contingent; if Plaintiffs' counsel had not succeeded in achieving significant relief for the class, they would not have recovered anything. They assumed a large risk, with no reward, for several years.

7. <u>The time limitations imposed by the client or circumstances</u>. This factor has little application to the case at bar except for the urgency associated with addressing testing and treatment for a serious condition like chronic HCV.

8. <u>The amount in controversy and the results obtained</u>. Unquantifiable issues of health and safety were at issue. To the extent a dollar amount can be placed on the recovery, it is at least $10 million, based on the South Carolina legislature's 2019 appropriation of that amount for the SCDC Hepatitis C program. Plaintiffs' counsel obtained excellent results – all of the injunctive relief sought by the Plaintiffs.

9. <u>The experience, reputation and ability of the attorney</u>. Plaintiffs' counsel, including a former federal judge, several law school professors, and a physician-attorney quite knowledgeable about chronic HCV, are experienced in both class actions and prison conditions litigation and have devoted significant time to public interest litigation.[10]

10. <u>The undesirability of the case within the legal community in which the suit arose</u>. Representation of prisoners and jail detainees is considered by many attorneys to be highly undesirable because of the unpopularity and impoverishment of the clients, the contingent nature of payment, and the many restrictions imposed by the PLRA.

11. <u>The nature and length of the professional relationship between attorney and client</u>. Plaintiffs' counsel have represented the class in this case for three years.

12. <u>Attorneys' fees awards in similar cases</u>. The Mediated Fees are in line with or lower than fee awards and settlements in similar cases. *See, e.g.*, *Duvall*, 2016 WL 3523682, at *11, *15 (awarding "$450,000 . . . with the prospect of an additional $100,000 over four more years" in jail conditions case and citing fee awards of $1.46 million and $4.8 million in similar cases).

The *Barber* factors favor a finding that the Mediated Fees are reasonable.

---

[10]  *See*  https://www.gbblegal.com/attorneys/;  https://www.yarboroughapplegate.com/our-team/; http://www.griffindavislaw.com/james-griffin; https://www.perkinscoie.com/en/professionals/index.html?start=0&count=30.

## CONCLUSION

For the foregoing reasons, the Parties respectfully request that the Court approve the Mediated Settlement Agreement Resolving the Issue of 42 U.S.C. § 1988 Fees and Costs, thereby authorizing a payment to Plaintiffs' counsel of $484,406.67.

Dated: October 6, 2020                                          Respectfully submitted,

**GRIFFIN | DAVIS**                                     **AIKEN, BRIDGES, ELLIOTT, TYLER &**
                                                        **SALEEBY, P.A.**
s/ James M. Griffin
James M. Griffin, Fed Id 1053                           s/Samuel F. Arthur, III
jgriffin@griffindavislaw.com                            Samuel F. Arthur III, Federal ID 7070
4408 Forest Drive, Suite 300                            sfa@aikenbridges.com
P.O. Box 999 (29202)                                    J. Rufus Bratton III, Federal ID 10332
Columbia, S.C. 29206                                    jrb@aikenbridges.com
(803) 744-0800                                          PO Drawer 1931
                                                        Florence, SC 29503
**GUTTMAN,  BUSCHNER  &  BROOKS**                        Telephone: 843.669.8787
**PLLC**                                                 Fax: 843.664.0097

Reuben A. Guttman*                                      *Attorneys for Defendant*
rguttman@gbblegal.com
Justin S. Brooks*
jbrooks@gbblegal.com
Nancy Gertner**
ngertner@gbblegal.com
Caroline Poplin*
cpoplin@gbblegal.com
Elizabeth H. Shofner*
lshofner@gbblegal.com
Paul Zwier*
pzwier@gbblegal.com
2000 P Street, NW, Suite 300
Washington, D.C. 20036
(202) 800-3001

**PERKINS COIE LLP**

s/ Christopher J. Bryant
Christopher J. Bryant, Federal ID 12538

13

cbryant@perkinscoie.com
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
(202) 654-6200

*Attorneys for Plaintiffs*

* admitted *pro hac vice*
** *pro hac vice* pending